## LIKE vs. McKINSTRY.

An action lies for slander of the plaintiff's title to personal property.

To maintain such an action the plaintiff must establish, 1. That the words were false; 2. That they caused an injury to him in reference to his title to the property; 3. That they were uttered maliciously, and in order to injure the plaintiff.

The plaintiff and defendant made a parol agreement, by which the former hired the farm of the latter, for one year from the 1st of April, 1861, with the privilege of sowing the farm to rye in the fall of 1861, and reaping the crop; the plaintiff to have the use of the barn and press, on the farm, to press the straw &c. The plaintiff sowed rye on the farm, in the fall of 1861, with the assent and assistance of the defendant. *Held* that the lease originally made was only legal and valid for one year from its commencement; but that the defendant, by assenting to, and assisting in, the sowing of the rye in the fall, sanctioned the stipulations in the lease, for the sowing and reaping of the crop, and virtually made a new agreement with the plaintiff, conceding the use of the farm for such further period as was requisite.

*Held, also,* that such new agreement was valid, and founded on a sufficient consideration, and gave to the plaintiff a good title to the rye, and the right to maintain an action for slander of his title.

APPEAL from a judgment entered at the circuit and an order made at a special term, denying a motion for a new trial. The action was brought for slander of the plaintiff's title to personal property, and was tried at the Columbia circuit, in January, 1863, before Justice HOGEBOOM and a jury.

The plaintiff hired and occupied a farm of the defendant, in the town of Livingston, Columbia county, for three years from April 1, 1859, to April 1, 1862, under a hiring from year to year by verbal agreement. The agreement for the last year, from April 1, 1861, to April 1, 1862, was made in March, 1861, and was by parol. By this agreement the plaintiff hired the farm for one year from April 1, 1861, for $425 rent, with the privilege of sowing the farm to rye, in the fall, and reaping it; the plaintiff to have the use of the barn and press, on the farm, to press the straw of the rye to be sown, and slat wood off the farm to use in pressing the

straw, and the privilege of the barn to thresh the rye in. The plaintiff sowed one hundred and thirteen bushels of rye, on the farm, in the fall of 1861. The defendant helped the plaintiff put in the rye, and while it was growing, on different occasions admitted that it belonged to the plaintiff. In March, 1862, the plaintiff offered the rye, then growing on the farm, for sale at public vendue. When the rye was offered for sale, the defendant said: "I forbid selling the rye; it is mine," in the presence of a number of farmers who attended the sale. The plaintiff said he would indemnify the purchaser. The rye was then sold, and was bid off by Peter Shaver for $3.37½ per bushel sowing. It was proved on the trial to be worth from $3.75 to $5, per bushel, and one of the witnesses who was alleged in the complaint to have been present at the time when the rye was exposed for sale, testified that but for the defendant forbidding the sale and saying the rye was his, he would have bid $3.75 per bushel, and with the privilege of pressing the straw with the press, and slat wood from the premises, it was worth twenty-five cents per bushel more.

It also appeared that the defendant, before the sale, consulted counsel as to his rights, by whom he was advised to go there on the day of sale and forbid the sale; that he did no more than forbid the sale, and say the rye was his. When the plaintiff rested the case on his part, the defendant moved for a nonsuit, and to dismiss the complaint. The motion was denied, and the defendant excepted. Upon the testimony being closed, the defendant insisted that on the whole case, as presented by the evidence, the plaintiff was not entitled to recover, and again moved the court to nonsuit the plaintiff. The court denied the motion, and the defendant excepted. The points raised appear in the opinion of the court. The jury rendered a verdict for the plaintiff, for $60. The defendant moved for a new trial, on the minutes of the justice, which was denied, and judgment was entered on the verdict.

*J. C. Newkirk,* for the appellant, (defendant.)

*R. E. Andrews,* for the respondent, (plaintiff.)

*By the Court,* MILLER, J. This action was brought to recover damages for slander of the plaintiff's title to personal property. It is somewhat of a novel character, and the first inquiry which addresses itself to the consideration of the court, is whether such an action can be maintained. Actions for slander to character and of the title to real estate are clearly maintainable. As they rest upon the fact that injury has been sustained, by analogy there would appear to be no reason why a party injured should not recover damages for slander of the title to personal property. In principle both remedies must stand upon the same foundation. "*Ubi jus, ibi remedium.*" "There is no wrong without a remedy," (1 *T. R.* 512; *Co. Lit.* 197, *b,*) is a maxim as old as the common law itself. And as the civil law was intended to redress all wrongs, no good reason exists why a party who has been injured by the slander of his title to personal property should be deprived of an action for damages, the same as when his private reputation is assailed, or an attack made upon the title of his real estate. It has been well observed, if a man has a right he must have a means to vindicate and maintain it, if he is injured in the exercise and enjoyment of it, and indeed it is a vain thing to imagine a right without a remedy, for want of right and want of remedy, are reciprocal. (*Ashley* v. *White,* 2 *Lord Raym.* 953, *per Holt, C. J. Winslow* v. *Greenbank, Willes,* 577, *per Willes, C. J. Vaugh. Rep.* 47, 253.)

There are but few cases reported in the books which have a bearing upon the question now considered, and it may not be inappropriate to refer to some of the leading authorities on the subject.

In *Broom's Com.* 514, 764, it is laid down, "words, written or oral, which falsely depreciate the value of chattel

property, may be made the subject of an action, provided special damage ensue from them." (*See also Starkie on Slander*, 202.)    In *Newman* v. *Zachary*, (*Aleyn.* 3,) also quoted by Bacon and Comyn, (*Bac. Abr.* 76, *B. i; Com. Dig.* 370, *C.* 1,) an action on the case was brought for slander to the title of personal property. Two of the plaintiff's sheep did estray, one of which being found again, the defendant, who was the plaintiff's shepherd, affirmed that it was the plaintiff's; whereupon the plaintiff paid for the feeding of it and caused it to be shorn and marked with his own mark. It was averred in the complaint that the defendant, knowing the sheep to be the plaintiff's, falsely and fraudulently affirmed to the bailiff of the manor, who had waifs and strays belonging to it, that this sheep was an estray, whereby the bailiff seized it, &c. It was adjudged that the action would lie, because the defendant by his false practice hath created trouble, disgrace and damage, to the plaintiff, and although the plaintiff have a cause of action against the bailiff, yet this will not take off his action against the defendant in respect to the trouble and charge he must undergo in the recovery against the bailiff. And Hale said, that if one slander my title, whereby I am wrongfully disturbed in my possession, though I have a remedy against the trespasser, I shall have an action against him that caused the disturbance. In *Ingram* v. *Lawson*, (6 *Bing. N. C.* 212,) it was held that a statement in a newspaper, that a ship of which the plaintiff was owner and master and which he had advertised for a voyage to the East Indies, was not a seaworthy ship, and that the Jews had bought her to take out convicts, was a libel on the plaintiff, in his trade and business, for which he might recover damages. In *Hill* v. *Ward*, (13 *Ala.* 310,) in an action for slander to personal property in claiming title to such property, when offered for sale as the property of another, it was held that the words should be set out, thus distinctly recognizing that the action would lie. In *Hargrave* v. *Le Breton*, (4 *Burr.* 2422,) it was held in

regard to real as well as personal estate, that to maintain an action for slander of title, there must be malice, express or implied, and the words spoken must go to defeat the plaintiff's title. In *Tobias* v. *Harland,* (4 *Wend.* 537,) which was an action to recover damages for slanderous words spoken of articles manufactured by the plaintiff, whereby divers persons refused to purchase them, the declaration was held bad on general demurrer, because such persons were not named. Marcy, J. in his opinion, distinctly recognizes the right to maintain the action for misrepresenting the quality of goods which a person has for sale, where special damages are alleged and proven. In *Linden* v. *Graham,* (1 *Duer,* 670,) which was an action for slander of the title of real property, Bosworth, J. in his opinion, speaks of "words spoken of and concerning the title to property," without noticing or recognizing any distinction between real and personal property.

Applying the doctrine established by the authorities cited, in connection with the general principle that where a man has a temporal loss or damage by the wrong of another, he may have an action on the case to be repaired in damages, (1 *Comyn. Dig. Action on the Case, A,* 178 ; *Bac. Abr. tit. Actions B,*) I do not discover any marked feature or characteristic which distinguishes an action of slander of the title of personal property from that of real estate, and I think the action in the case at bar can be sustained and upheld.

It being quite clear that the action lies, it becomes important to inquire, in the next place, whether the plaintiff has made out a case within the rules essential to the maintenance of an action of this character.

For the purpose of maintaining an action for slander to the title of personal property, I think it must be established, 1st. That the words were false ; 2d. That they caused an injury to the plaintiff in reference to his title to the prop-

Like *v.* McKinstry.

erty; and 3d. That they were uttered maliciously and in order to injure the plaintiff.

*First.* Whether the words uttered were false must depend upon the question whether the plaintiff was the actual owner of the property. This is an important inquiry, and perhaps the controlling question in the case. It is insisted by the defendant's counsel that the agreement between the plaintiff and the defendant for the hiring of the farm was a contract relating to an interest in land and a contract for the sale of an interest in land, or a contract for the leasing of land, for a longer period than one year, and not being in writing it was void. (2 *R. S.* 1*st ed.* 134, § 6. *Id.* 135, § 8.) The contract alleged to have been made for the hiring of the farm was for one year, and from the first of April, 1861, to the first of April, 1862, with the privilege of sowing and reaping the grain to be sown in the fall and of using the barn and press, on the farm, and of getting slat wood from it. It does not distinctly appear whether the slat wood was already cut on the farm, or whether it was intended that the plaintiff should have the privilege of cutting it. The point raised, therefore, that the right to cut slat wood was an interest in real estate, is not presented.

I entertain no doubt that the lease originally made was only legal and valid for one year from its commencement, and terminated at the expiration of that period. It being good only for a year, the plaintiff was thereby strictly cut off from the benefit of his agreement to reap the rye, unless there was a subsequent valid contract to that effect. In reference to the existence of another contract, the evidence shows that the rye was sown in the fall previous to the expiration of the lease. It was done with the approbation and the assent of the defendant, and with his co-operation and assistance. The defendant thereby sanctioned the arrangement previously made for the sowing and reaping of the rye, and virtually made a new agreement with the plaintiff for the use of the farm, for that purpose. Here was a contract binding upon

the defendant which gave the plaintiff full title to the rye, even if he had none prior to that period. It is urged that there was no consideration for a new contract. I think that the rent of the farm was a sufficient consideration for the new agreement made to carry out merely what had previously been agreed upon, and constituted an important element in the original hiring. It does not exactly appear when the rent was payable, or when it was actually paid; but the defendant by allowing the plaintiff to go on the farm and put in the crop, and by assisting him in so doing, and by his repeated declarations, afterwards, that the rye was the property of the plaintiff, virtually said and agreed that in consideration of the rent the plaintiff was authorized to sow and to reap the grain sown in accordance with the prior understanding. This was a valid and binding contract, which the plaintiff had a right to enforce, and the grain belonged to him.

I do not deem it necessary to consider whether at the time the alleged slander was uttered, being prior to the expiration of the year, and while the plaintiff was still in possession of the premises, the defendant was authorized to use the expressions he did. Nor, with the views I entertain, is it important to discuss whether there was a revocation of a license given to reap the rye, and that the revocation made at the time when it is claimed the injury was done, merged and canceled the injury itself.

I think the plaintiff had title to the rye, and a right to reap it, and it thereupon follows that the words uttered by the defendant were false.

*Second.* Did the words cause any injury to the plaintiff in regard to his title to the property? I think it is quite clear that such was the result. It was proved on the trial that the rye was worth more money than it brought upon the sale. One witness swears that he was prevented from bidding by the announcement of the defendant, claiming the rye and forbidding the sale, and that he declined to bid on that account. He also states that he should have bid more

but for this.   The loss of this sale alone would support the action.   (*Kendall* v. *Stone*, 2 *Sandf.* 279.)   The inevitable and natural consequence resulting from such a declaration, among a large body of men assembled on such an occasion, would be to reduce the value of the property; to impair the plaintiff's title and affect the sale.   And such appears to have been the result.

*Third.* The question whether the words were uttered maliciously, and with the intent to injure the plaintiff, also presents an important inquiry.   Without malice or an intent to injure, the action will not lie.   (2 *Sandf.* 269.   5 *Barb.* 301.)   This point does not appear to have been distinctly taken on the motion for a nonsuit when the plaintiff rested his case, and as no exception was taken to the charge of the judge, I infer it was unexceptionable in this particular. Perhaps it is covered by the motion made at the close of the trial, by the defendant.   Conceding that it is raised, I think there was sufficient evidence to go to the jury upon that question.   The proof showed that the defendant, in the presence of some one hundred persons, who were there to attend the sale of the rye and other property of the plaintiff, distinctly and unqualifiedly forbade the sale, and said the rye was his.   He gave no reason, at the time, for this assertion, and made no explanation of his title, or as to how he claimed it.   He had consented, previously, to its being sowed; repeatedly, on different occasions, conceded that it belonged to the plaintiff, and never, up to that day, had pretended to claim it in the presence of the plaintiff.   His language and his actions were a direct attack upon the plaintiff's title to the rye, and so far as the testimony goes, without any apology or excuse on his part at that time.   If he intended to claim title upon the ground that he was acting under the advice of counsel that the rye was his property, and that he attended the vendue and forbade the sale in pursuance of that advice; that in fact he was merely insisting upon his legal rights, I think he should have so stated at the time he forbade the

sale. This explanation would have placed his claim upon the right ground, and in the minds of the jury who passed upon the question, might have exonerated him from all blame; at least from a charge of acting maliciously. Honesty and fair dealing required that this should have been done, and it was a mistake, at least an error of judgment to act otherwise. The evidence upon the subject of malice was fairly before the jury, and for any thing that appears was fairly submitted to them. There was certainly some evidence bearing on the question, and as it was entirely for the jury to decide, (2 *Sandf.* 279,) I do not see how their finding can be disturbed.

The remarks already made cover the points presented on the argument, and I am of the opinion there was no error committed on the trial. The judgment, therefore, should be affirmed, and the motion for a new trial denied, with costs.

[ALBANY GENERAL TERM, September 7, 1863. *Gould, Hogeboom* and *Miller,* Justices.]