# PANAMA RAILROAD COMPANY *v.* BOSSE.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR
THE FIFTH CIRCUIT.

No. 203. Submitted January 31, 1919.—Decided March 3, 1919.

An order of the President continuing in force for the government of the Canal Zone "the laws of the land, with which the inhabitants are familiar," etc., was construed by the Government as including

the Civil Code of Panama, and was followed by an act of Congress ratifying the laws, orders, etc., promulgated by the President. *Held,* that the order merely embodied the rule that a change of sovereignty does not end existing private law, and that the act neither fastened upon the Zone a specific civil-law interpretation of the Code nor overthrew the principle of common-law construction adopted and applied by the Supreme Court of the Zone before the act was passed. P. 44.

The provisions of the Civil Code of the Canal Zone touching the relation of master and servant are not inconsistent with the common-law rule holding the former liable for personal injuries caused by the negligence of the latter while in the course of his employment; and it is not erroneous for the Supreme Court of the Zone to apply the common-law interpretation, at least in cases arising since the Zone was expropriated and became peopled only by the employees of the Canal, of the Panama Railroad and of licensee steamship lines and oil companies. P. 45.

Pain may be considered in fixing damages for personal injuries in the Canal Zone. P. 47.

239 Fed. Rep. 303, affirmed.

The case is stated in the opinion.

Mr. *Frank Feuille* for plaintiff in error. Mr. *Walter F. Van Dame* was also on the brief.

Mr. *Theodore C. Hinckley* and Mr. *Joseph W. Bailey* for defendant in error.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action for personal injuries and consequent suffering alleged to have been caused, on July 3, 1916, by the Railroad Company's chauffeur's negligent driving of a motor omnibus at an excessive rate of speed in a crowded thoroughfare in the Canal Zone. The suit was brought in the District Court of the Canal Zone. The defendant, the plaintiff in error, demurred to the declaration generally, and also demurred specifically to that part that claimed damages for pain. The demurrer was overruled

and there was a trial, at which, after the evidence was in, the defendant requested the Court to direct a verdict in its favor and, failing that, to instruct the jury that the plaintiff could not recover for physical pain. The instructions were refused, the jury found a verdict for the plaintiff and the judgment was affirmed by the Circuit Court of Appeals. 239 Fed. Rep. 303. 152 C. C. A. 291. Followed in *Panama R. R. Co.* v. *Toppin,* 250 Fed. Rep. 989.

The main question in the case is whether the liability of master for servant familiar to the common law can be applied to this accident arising in the Canal Zone. Subordinate to that is the one already indicated, whether there can be a recovery for physical pain. There is some slight attempt also to argue that the defendant's negligence was not the immediate cause of the injury, but as that depended upon the view that the jury might take of the facts and as there was evidence justifying the verdict, we shall confine ourselves to the two above-mentioned questions of law.

By the Act of Congress of April 28, 1904, c. 1758, § 2, 33 Stat. 429, temporary powers of government over the Canal Zone were vested in such persons and were to be exercised in such manner as the President should direct. An executive order of the President addressed to the Secretary of War on May 9, 1904, directed that the power of the Isthmian Commission should be exercised under the Secretary's direction. The order contained this passage, "The laws of the land, with which the inhabitants are familiar, and which were in force on February 26, 1904, will continue in force in the canal zone . . . until altered or annulled by the said commission;" with power to the Commission to legislate, subject to approval by the Secretary. This was construed to keep in force the Civil Code of the Republic of Panama, which was translated into English and pub-

lished by the Isthmian Canal Commission in 1905. By the Act of Congress of August 24, 1912, c. 390, § 2, 37. Stat. 560, 561, "All laws, orders, regulations, and ordinances adopted and promulgated in the Canal Zone by order of the President for the government and sanitation of the Canal Zone and the construction of the Panama Canal are hereby ratified and confirmed as valid and binding until Congress shall otherwise provide.". On these facts it is argued that the defendant's liability is governed by the Civil Code alone as it would be construed in countries where the civil law prevails and that so construed the code does not sanction the application of the rule *respondeat superior* to the present case.

But there are other facts to be taken into account before a decision can be reached. On December 5, 1912, acting under the authority of the before-mentioned Act of August 24, 1912, § 3, the President declared all the land within the limits of the Canal Zone to be necessary for the construction &c. of the Panama Canal and directed the Chairman of the Isthmian Commission to take possession of it, with provisions for the extinguishment of all adverse claims and titles. It is admitted by the plaintiff in error that the Canal Zone at the present time is peopled only by the employees of the Canal, the Panama Railroad, and the steamship lines and oil companies permitted to do business in the Zone under license. If it be true that the Civil Code would have been construed to exclude the defendant's liability in the present case if the Zone had remained within the jurisdiction of Colombia it does not follow that the liability is no greater as things stand now. The President's order continuing the law then in force was merely the embodiment of the rule that a change of sovereignty does not put an end to existing private law, and the ratification of that order by the Act of August 24, 1912, no more fastened upon the Zone a specific interpretation of the former Civil

Code than does a statute adopting the common law fasten upon a territory a specific doctrine of the English Courts. *Wear* v. *Kansas*, 245 U. S. 154, 157. Probably the general ratification did no more than to supply any power that by accident might have been wanting. *Honolulu Rapid Transit & Land Co.* v. *Wilder*, 211 U. S. 137, 142. In the matter of personal relations and duties of the kind now before us the supposed interpretation would not be a law with which the present "inhabitants are familiar," in the language of the President's order, but on the contrary an exotic imposition of a rule opposed to the common understanding of men. For whatever may be thought of the unqualified principle that a master must answer for the torts of his servant committed within the scope of his employment, probably there are few rules of the common law so familiar to all, educated and uneducated alike.

As early as 1910 the Supreme Court of the Canal Zone announced that it would look to the common law in the construction of the Colombia statutes, *Kung Ching Chong* v. *Wing Chong*, 2 Canal Zone Sup. Ct. Rep. 25, 30; and following that announcement, in January, 1913, held that "at least so far as the empresarios of railroads are concerned" the liability of master for servant would be maintained in the Zone to the same extent as recognized by the common law. *Fitzpatrick* v. *Panama R. R. Co.*, *id.*, 111, 121, 128. The principle certainly was not overthrown by the Act of 1912. It is not necessary to dwell upon the drift toward the common-law doctrine noticeable in some civil-law jurisdictions at least, or to consider how far we should go if the language of the Civil Code were clearer than it is. It is enough that the language is not necessarily inconsistent with the common-law rule. By Art. 2341, in the before-mentioned translation, "He who shall have been guilty of an offense or fault, which has caused another damage, is obliged to repair it, without

prejudice to the principal penalty which the law imposes" . . . By Art. 2347, "Every person is liable not only for his own acts for the purpose of the indemnity of damage, but also for the acts of those who may be under his care," illustrating by the cases of father, tutor, husband, &c. By Art. 2349, "Masters shall be responsible for the damage caused by their domestics or servants, on the occasion of a service rendered by the latter to the former; but they shall not be responsible if it be proved or appear that on such occasion the domestics or servants conducted themselves in an improper manner, which the masters had no means to foresee or prevent by the employment of ordinary care and the competent authority; in such case all responsibility for the damage shall fall upon said domestics or servants." The qualification in this last article may be taken to refer to acts outside the scope of the employment. It cannot refer to all torts, for that would empty the first part of meaning. A master must be taken to foresee that sooner or later a servant driving a motor will be likely to have a collision, which a jury may hold to have been due to his negligence, whatever care has been used in the employment of the man.

We are satisfied that it would be a sacrifice of substance to form if we should reverse a decision, the principle of which has been accepted by all the judges accustomed to deal with the locality, in deference to the possibility that a different interpretation might have been reached if the Civil Code had continued to regulate a native population and to be construed by native courts. It may be that they would not have distinguished between a negligent -act done in the performance of the master's business and a malicious one in which the servant went outside of the scope of that for which he was employed. But we are by no means sure that they would not have decided as we decide. At all events we are of opinion that the ruling was correct. As we do not rely for our conclusion upon a .

41.                          Syllabus.

Colombia act specially concerning the empresarios of railroads, we do not discuss a suggestion, made only, it is said, to show that the act is inapplicable, to the effect that the charter of the Railroad Company did not grant the power to operate the omnibus line. The company was acting under the authority and direction of General Goethals and we do not understand that the defence of *ultra vires* is set up or could prevail.

In view of our conclusion upon the main point but little need be said with regard to allowing pain to be considered in fixing the damages. It cannot be said with certainty that the Supreme Court of the Zone was wrong in holding that under the Civil Code damages ought to be allowed for physical pain. *Fitzpatrick* v. *Panama R. R. Co.*, 2 Canal Zone Sup. Ct. Rep. 111, 129, 130; *McKenzie* v. *McClintic-Marshall Construction Co., id.,* 181, 182. Physical pain being a substantial and appreciable part of the wrong done, allowed for in the customary compensation which the people of the Zone have been awarded in their native courts, it properly was allowed here.

*Judgment affirmed.*