## PANAMA R. CO. v. ROCK.

(Circuit Court of Appeals, Fifth Circuit. April 15, 1921.)

No. 3567.

1. Death �köi7—Civil law allowed recovery in criminal prosecution.

Unlike the common law, the civil law always recognized liability for a wrongful act causing death, though reparation was assessed in the criminal prosecution.

2. Torts �köi1—"Offense or fault" under Panama law held to mean "tort."

Under Civ. Code Panama, art. 2341, declaring that one guilty of an offense or fault causing another damage is obliged to repair it, "offense or fault," when construed in connection with article 34, tit. 3, relative to obligations contracted without agreement, has the same meaning as "tort."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Fault; Offense; Tort.]

3. Death ⊦köi9—Laws of Panama extended to Canal Zone held to allow recovery.

Under Civ. Code Panama, art. 2341, providing that one guilty of an offense or fault causing damage to another must repair it, and article 39, law 169 of 1896, providing for reparation of damages in a criminal proceeding or separate civil action, the laws of Panama provided for

⊦köiFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

liability for death by wrongful act, and for the enforcement of such liability, on February 26, 1904, when, by presidential proclamation, such laws were made applicable to the Canal Zone.

**4. Death ⊙⥲9—Civil action maintainable under laws of Canal Zone.**

Under Civ. Code Panama, art. 2341, and Code Civ. Proc. Canal Zone, §§ 1, 83, 107, and 172, a civil action may be maintained for an act causing death, even assuming that article 39 of law 169 of 1896, is not in effect in the Canal Zone, because not included in the Civil Code.

**5. Trial ⊙⥲296(3)—Instruction held not to give impression that defendant's liability was established, other than prima facie, in view of other instructions.**

In a passenger's action for injuries in a railroad wreck, an instruction that, if no explanation of the wreck was made, defendant's negligence was established, *held* not intended to give the impression that it was established other than prima facie, in connection with further charges that, if defendant had made satisfactory explanation, and the jury were satisfied that it was not negligent, it should render a verdict of not guilty, and that the derailment of the train made out a prima facie case entitling plaintiff to recover, unless the presumption of negligence was overcome.

Walker, Circuit Judge, dissenting.

In Error to the District Court of the Canal Zone; John W. Hanan, Judge.

Action by James Rock against the Panama Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Frank Feuille and Walter F. Van Dame, both of Ancon, C. Z., for plaintiff in error.

William C. MacIntyre and W. C. Todd, both of Cristobal, C. Z., for defendant in error.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. Defendant in error was plaintiff below, and sued to recover damages for the death of his wife, which was caused by the derailment of one of defendant's trains, alleged to be due to its negligence. Plaintiff recovered judgment.

It is assigned for error that the court overruled a demurrer, based upon the ground that no cause of action for death by wrongful act exists in the Canal Zone. The statute under which this suit is brought is article 2341 of the Civil Code of Panama, which was continued in force in the Canal Zone by executive order, ratified by act of Congress in 1912 (37 Stat. 561). The statute reads as follows:

"He who shall have been guilty of an offense or fault, which has caused another damage, is obliged to repair it, without prejudice to the principal penalty which the law imposes for the fault or offense committed."

This act was in force in Colombia and Panama prior to the acquisition of the Canal Zone. To sustain the assignment it is argued that the act creates no liability in cases of death, and that, if liability exists, there is no legal machinery for its enforcement.

[1] 1. One of the reasons usually given for the common-law doctrine that no action can be maintained for death by wrongful act is that the private injury became merged in the public wrong. But a contrary doctrine has prevailed from early times under the civil law:

---

"He that kills a man unjustly is bound to pay all expenses which may have been incurred for physicians or surgeons, and to give to those whom the person slain was from his relation accustomed to maintain—such as his parents, wife and children—so much as their hope of that maintenance was worth, regard being had to the age of the person slain." Grotius, book 2, c. 17, § 13.

Rutherford, in his Institutes on Natural Law, says:

"He who kills another unlawfully is obliged to defray such expenses as the person killed may have been at in endeavoring to have his wounds cured. He is obliged, likewise, to make amends to those who had a right to be maintained by the deceased, such as his wife, his children, or his parents, according to the value of what they might have expected to receive from him, considering his age, his fortune, or his employment." Book 1, c. 17, § 9.

The early Spanish law, found in the Siete Partidas, book 7, title 15, law 3, reads as follows:

"He who causes damage shall make reparation therefor to the person who received it, whether it had been done by himself or by his command or advice, or had happened through his fault."

There is no question that the right of action exists under the Code Napoléon, which provides:

"Every act of man which causes damage to another obliges him by whose fault it happened to repair it." The Harrisburg, 119 U. S. 199, 7 Sup. Ct. 140, 30 L. Ed. 358.

The provision is found in substance in the laws of France, Spain, Chile, Colombia, Cuba, Porto Rico, the Philippines, and other civil law jurisdictions. It was held in Louisiana under the same provision that an action for death would not lie in the absence of statute. Louisiana followed the common-law rule, instead of the civil law rule. In the arguments and opinions in the cases of Hubgh v. Railroad Co., 6 La. Ann. 496, and Hermann v. Railroad Co., 11 La. Ann. 5, will be found elaborate discussions of the Roman, Spanish, and French law on this subject.

Denial of the right of recovery in Louisiana rests altogether upon the authority of the first of these two cases. In the second case, the Supreme Court declined to reconsider the question, but stated:

"Were the questions res nova, we should feel great difficulty in arriving at a satisfactory conclusion."

[2] The statute was in force while the republic of Colombia formed a part of Spain, and although the Civil Code of Colombia, adopted in 1873, was based upon the Civil Code of Chile, yet the Chilean Code in turn was based upon the Spanish civil law. In construing the words "offense" and "fault," in article 2341, regard should be had to title 3, art. 34, Civil Code of Panama, which is as follows:

"Obligations contracted without an agreement result from the law or from a voluntary act of the parties. Those resulting from the law are expressed therein.

"If the contract from which they result be licit, they constitute a quasi contract.

"If the act be illicit, and committed with the intention of doing an injury, they constitute a crime (delito).

"If the act be culpable, but committed without the intention of doing an injury, it constitutes a quasi crime or offense."

When so considered, an offense or fault has the same meaning as tort.

Article 2358, Civil Code of Panama, provides:

"The actions for the repair of the damage arising from an offense or fault, which may be brought against those who may be punishable for the offense or fault, prescribe within the terms fixed in the Penal Code for the prescription of the principal penalty."

It is of no significance, if it be a fact, that civil actions for death by wrongful act were not instituted, because it was a feature of the civil law system that reparation for private wrong was assessed in criminal prosecutions. Penalties were provided for most acts which resulted in personal injury or death, but it is quite clear that damages were awarded, although it was not necessary to bring civil suits in order to obtain them. A separate civil action was sustained in Spain in 1894, and like actions since then have been entertained in Cuba, Porto Rico, and the Philippines. In 1896 separate civil suits were authorized in Panama, although the old system was also continued, by article 39 of law 169, which provides:

"The civil action for the reparation of damages may be instituted by the party interested in the same criminal proceedings, without the necessity of constituting himself the accuser, and it will be decided in the judgment that puts an end to the criminal case.

"It may also be instituted separately before the proper civil judge, and in such case the civil action will remain in suspense until the criminal action has been definitely adjudged, regardless as to whether it has been instituted prior or subsequent to the institution of the criminal action. But for torts [the text in Spanish says, 'cuasi-delictos o culpas'] the civil action for damages may be instituted without any dependency upon the criminal action."

[3] It follows, therefore, that on February 26, 1904, when the President issued his proclamation, the laws of Panama provided for liability for death by wrongful act, and also for the enforcement of that liability in either a criminal prosecution or a civil action.

[4] 2. No part of the act of 1896, above set out, appears in the Civil Code of the Canal Zone. It is contended that the provision, therein contained, for a separate civil remedy was not continued in effect in the Canal Zone after its acquisition by the United States, that no method is elsewhere prescribed in the Civil Code for enforcing civil liability for death, and that therefore article 2341 is ineffectual. The proclamation of the President provided that—

"The laws of the land, with which the inhabitants are familiar, and which were in force in February, 1904, will continue in force in the Canal Zone," etc.

The Isthmian Canal Commission was authorized to prepare a Penal Code and a Civil Code for the Canal Zone. Even if they had failed to include a provision to enforce article 2341, it does not follow that this article would cease to be in effect; for, in view of the President's proclamation, it is not lightly to be assumed that the mere failure to extend a method of procedure for enforcing a civil right, contained in a penal provision, would operate to extinguish that right. The omission of express authority to bring a civil action to recover damages for torts was doubtless unintentional, and probably due to the fact that

the provision was incorporated among the penal provisions of the Panama Code which were all repealed. Again, it is doubted if the Code of Civil Procedure of the Canal Zone was intended to be exclusive, and to repeal all acts not specifically re-enacted.

In section 2 of the Code of Civil Procedure it is stated that its provisions should be liberally construed, and it was further enacted that all Codes, statutes, etc., "now in force, in so far as they conflict with the express provisions of this Code, are hereby repealed," etc. Section 820. If there was no conflict, it is doubtful if there would be a repeal. But, if the failure to include that portion of the act of 1896, giving a civil right of action to enforce the provisions of article 2341, be construed as effecting a repeal, the Code of Civil Procedure of the Canal Zone contains ample authority for this action. Section 1 provides that an "action" means:

"An ordinary suit in a court of justice by which one party prosecutes another for the enforcement or protection of a right, or the redress or prevention of a wrong."

Other provisions are:

Section 83 (10): "If the recovery of money or damages is demanded, the amount demanded must be stated."

Section 107: "Every action must be prosecuted in the name of the real party in interest."

Section 172: "The word 'action' as used in this chapter, is to be construed, wherever it is necessary to do so, as including a special proceeding of a civil nature."

In addition to all this, under our system of jurisprudence, it is the duty of civil courts to enforce civil rights of action, and special authority to do so is not necessary. Article 2341 is the basis for authority to bring civil suits for damages for personal injury, as well as for death. In Panama Railroad v. Bosse, 239 Fed. 303, 152 C. C. A. 291, this court affirmed a judgment for personal injury, occurring in the Canal Zone, based upon this particular statute, and its decision was affirmed by the Supreme Court. 249 U. S. 41, 39 Sup. Ct. 211, 63 L. Ed. 466.

Again, in Panama Railroad Co. v. Toppin, 250 Fed. 989, 163 C. C. A. 239, this court upheld the right of action under this statute for a personal injury which occurred in Panama, and its decision was affirmed in 252 U. S. 308, 40 Sup. Ct. 319, 64 L. Ed. 582. In commenting on the statute now under consideration, the Supreme Court said:

"There seems to have been a rule of practice under the Colombian Judicial Code (article 1501) by which, if the civil action and the criminal action arising out of the same acts are not brought at the same time, the civil action cannot be prosecuted until the conclusion of the criminal action with the condemnation of the delinquent. But such rule obviously can have no application here, among other reasons because it refers to the case where the same person is liable both civilly and criminally. Here it is the engineer who is liable criminally under the Police Code and the company against whom civil liability is being enforced."

The Supreme Court had in mind also another statute of Panama, enacted in 1887, and reproduced in the opinion, which reads:

"Railroad companies are responsible for the wrongs and injuries which are caused to persons and properties by reason of the service of said railroads

and which are imputable to want of care, neglect, or violation of the respective police regulations which shall be issued by the government as soon as the law is promulgated."

This statute was applicable to the Panama Railroad Company. It was then, as it is now, the only railroad company in the Canal Zone. Other cases in which this court has upheld the right of action for personal injuries are Bergen Point Iron Works v. Shaw, 249 Fed. 466, 161 C. C. A. 424; Pacific Mail S. S. Co. v. Beneby, 250 Fed. 444, 162 C. C. A. 514. It is true that in these cases the point was not made that recovery could only be had as an adjunct to a criminal prosecution, but the cases are to the effect, nevertheless, that civil suits lie for injuries; and if they lie for injuries, then they do for death, because all actions for damages, whether for injury or death, are based upon this statute.

[5] 3. An assignment is based upon a charge of the court to the effect that, if the jury found that no explanation of the wreck was made, the defendant's negligence was established. Immediately following that charge, the court stated that if defendant had made satisfactory explanation, and if the jury were satisfied that the defendant was not negligent, it should render a verdict of not guilty. In another part of the charge, the jury was instructed that the derailment of the train made out a prima facie case, on which plaintiff was entitled to recover unless the presumption of negligence was overcome.

The acts of negligence pleaded are: The placing of the refrigerator cars, which were much larger than the others, next to the engine and in front of the passenger cars, and excessive speed. The evidence shows that other wrecks had occurred, which could not be explained by any defect in the track or rolling stock, but in each of them the refrigerator cars occupied the same position relative to the passenger coaches. On the issue of speed, the engineer testified the train was running at from 33 to 35 miles per hour; the conductor estimated the speed at 29 miles, although he had testified in the companion case of Castilla, two days before, that the speed ranged from 35 to 40 miles per hour. At the time of the accident the train was on a curve and running down grade.

It is quite clear that the court did not intend to leave the impression upon the jury that the negligence of defendant was established, but only that the fact of the derailment was prima facie evidence of negligence. So construed, the instruction was correct. San Juan Light Co. v. Requena, 224 U. S. 89, 32 Sup. Ct. 399, 56 L. Ed. 680; Bergen Traction Co. v. Damerest, 62 N. J. Law, 755, 42 Atl. 729, 72 Am. St. Rep. 685; Minahan v. Railroad Co., 138 Fed. 37, 70 C. C. A. 463; Weber v. Railroad Co., 175 Iowa, 358, 151 N. W. 852, L. R. A. 1918A, 626; 13 L. R. A. (N. S.) 606; 29 L. R. A. (N. S.) 811.

Error is not made to appear by any of the assignments, and the judgment is affirmed.

WALKER, Circuit Judge (dissenting). No fact or circumstance has been called to our attention which indicates that, while the above set out article 2341 of the Civil Code was in force in Panama and Colombia prior to the acquisition of the Canal Zone by the United States,

it was understood or administered as having the effect of giving a civil right of action for the death of a human being caused by the wrong or negligence of another. So far as the writer is informed, no court or commentator whose opinion on the subject would be entitled to weight has expressed the opinion that that provision, standing by itself, gives such a right of action. The only disclosed recognition of the existence of such a right of action as a part of the law of Panama was after the United States acquired dominion over the Canal Zone, and was based on enactments which have not become part of the law of the Canal Zone. By the criminal law of Colombia and Panama, which was not continued in force in the Canal Zone, one guilty of a crime including homicide, may, in criminal proceedings against him for the offense, be adjudged to make reparation to another who was damaged or injured thereby. Such an award, so made, is an enforcement of a provision of the public criminal law, though a private person is a beneficiary of such enforcement.

The language used in the article mentioned certainly does not plainly disclose an intention to give a right of action for wrongful death. A provision of the Louisiana Civil Code, equally, if not more, comprehensive in its terms, and which contains nothing indicating that it deals only with offenses or faults involving penal consequences, was held not to give such a right of action. In view of the generality of the language of the provision, the absence of any satisfactory showing that, during the long period of time it was in force prior to the acquisition of the Canal Zone by the United States, the effect was accorded to it of giving a civil right of action for wrongfully or negligently causing the death of a human being, is not without weight in determining the meaning to be given to it as part of the law of Panama which was continued in force in the Canal Zone. The avowed purpose was to continue in force existing private law with which the inhabitants of the acquired territory were familiar. To give a provision of such law so continued in force a meaning not clearly expressed by its language and which, prior to the change of sovereignty, it was not understood to have, practically would amount to changing the law. It is disclosed that, before the change of sovereignty, a familiar incident of criminal proceedings in the territory affected by the change was an adjudication that the wrongdoer make reparation to one who was injured by the commission of the crime, even if the crime was a homicide. It is not disclosed that, prior to the change of sovereignty, the provision in question had acquired the status of familiar law having the effect of giving a civil right of action for wrongfully causing the death of a human being.

Under the common law a civil right of action for wrongfully causing the death of another does not exist in the absence of a statute giving it. The Harrisburg, 119 U. S. 199, 7 Sup. Ct. 140, 30 L. Ed. 358. Common-law principles are not be ignored in dealing with provisions of a system of private law, not of common-law origin, which is kept in force by the United States in territory acquired from another sovereignty. Panama Railroad Co. v. Bosse, 249 U. S. 41, 39 Sup. Ct. 211, 63 L. Ed. 466. The rule that a statute disclosing a pur-

pose to do so is required to give a civil right of action for wrongfully causing another's death is a part of the system of law with which the present inhabitants of the Canal Zone are familiar. To accord to the provision in question the effect of giving such a right of action would amount to giving it a meaning not plainly expressed by its language, and which it is not shown to have acquired before it was continued in force in the Canal Zone, and to giving it an effect which such a provision does not have under the law which is familiar to the present inhabitants of that territory. It well may be supposed that if, prior to the change of sovereignty, the provision in question was authentically recognized as having the meaning now attributed to it in behalf of the defendant in error, a satisfactory showing to that effect could and would have been made.