## PANAMA RAILROAD COMPANY *v.* ROCK.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 4. Submitted October 6, 1924.—Decided November 17, 1924.

1. At common law no private cause of action arises from the death of a human being, and such, it seems, was also the general rule of the Roman civil law. P. 211.
2. Article 2341 of the Civil Code of Panama, which reads: "He who shall have been guilty of an offense or fault, which has caused another damage, is obliged to repair it, without prejudice to the principal penalty which the law imposes for the fault or offense committed,"—was made operative in the Canal Zone by Executive Order of May 9, 1904, and confirmed as valid and binding there by the Act of August 24, 1912, § 2, 37 Stat. 560. P. 211.

3. In view of the Spanish affinities of the South American countries that adopted this article,—first Chile, then the States of Colombia, including Panama, which apparently took it from Chile,—it is to be assumed that it was adopted from a like provision in the Spanish Code rather than from another in the Code Napoleon. P. 212.

4. Hence an earlier French construction sustaining a private action for death caused by negligence can not be presumed to have been adopted with the statute, and the more clearly so in the absence of ground to infer that the adoption was with knowledge of such construction. *Id.*

5. In the absence of construction by Spain prior to the adoption by Chile, by Chile prior to the adoption by Panama and by Panama or Colombia prior to the adoption for the Canal Zone, the article must be independently construed, according only persuasive force to decisions of the Spanish-speaking countries. P. 213.

6. The Executive Order and the Act of 1912, having continued in force in the Canal Zone the laws of the land " with which the inhabitants are familiar," the population there having immediately become largely American, and the local courts having adopted common-law principles in construing statutes, the article should be construed in accordance with the common law, as not granting a private cause of action for death by negligence. P. 214.

272 Fed. 649, reversed.

ERROR to a judgment of the Circuit Court of Appeals, which affirmed a judgment recovered by Rock in the District Court for the Canal Zone for damages resulting from the death of his wife, due, as it was alleged, to negligence of the Railroad Company.

*Mr. Walter F. Van Dame* for plaintiff in error.

*Mr. William C. Todd* for defendant in error.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

This is an action brought in the District Court for the Canal Zone by James Rock to recover damages for the death of his wife, alleged to have resulted in 1918 from the negligence of the railroad company, while she was being

transported as a passenger. Upon the verdict of a jury, final judgment was rendered for plaintiff, which was affirmed by the Circuit Court of Appeals. 272 Fed. 649. The sole question presented for our determination is whether, under the law of the Canal Zone then in force, there was a right of action.

It is settled that at common law no private cause of action arises from the death of a human being. *Insurance Co.* v. *Brame*, 95 U. S. 754, 756. The right of action, both in this country and in England, depends wholly upon statutory authority. *Dennick* v. *Railroad Co.*, 103 U. S. 11, 21; *Seward* v. *The "Vera Cruz"*, L. R. 10 App. Cases 59, 70. This Court, also, after elaborate consideration, held that no such action could be maintained in the courts of the United States under the general maritime law. *The Harrisburg*, 119 U. S. 199. And the general rule of the Roman civil law seems to have been the same as that of the common law. Such was the conclusion of the Supreme Court of Louisiana in a case which was discussed with great fullness and learning at the bar and well considered by that court upon its original presentation and upon rehearing. *Hubgh* v. *New Orleans & C. R. R. Co.*, 6 La. Ann. 495, 509–511.

But it is contended that the action is maintainable under Art. 2341 of the Civil Code of Panama, which became operative in the Canal Zone by Executive Order of May 9, 1904. That article reads:

"He who shall have been guilty of an offense or fault, which has caused another damage, is obliged to repair it, without prejudice to the principal penalty which the law imposes for the fault or offense committed."

The applicable passage of the Executive Order is, "The laws of the land, with which the inhabitants are familiar, and which were in force on February 26, 1904, will continue in force in the Canal Zone . . . until altered or annulled by the said Commission. . . ."

The Act of Congress of August 24, 1912, c. 390, § 2, 37 Stat. 560, 561,[1] had the effect of confirming this article as valid and binding within the Canal Zone.

The provision under consideration apparently was adopted from the Code of Chile by the several States of Colombia, the adoption by Panama being in 1860. The contention is that the provision in the Chilean Code, in substance, was taken from the Code Napoleon and is to be found, also, in the Civil Code of Spain; that both the French and the Spanish courts had interpreted it as justifying an action such as we are here reviewing; and the familiar rule is invoked that a provision adopted by one country from the laws of another country is presumed to carry with it the meaning which it had acquired by the known and settled construction of the latter. Undoubtedly the decisions of the French courts were to the effect stated. *La Bourgogne,* 210 U. S. 95, 138. It must be borne in mind, however, that the South American countries named were predominantly Spanish in race and language, and, therefore, it may scarcely be doubted that the statute was taken directly from the Spanish and not the French Code. It follows that the presumption that the French construction was adopted with the adoption of the statute cannot be indulged. *Texas & Pacific Ry. Co.* v. *Humble,* 181 U. S. 57, 65. Moreover, there is nothing in any of the circumstances called to our attention to support an inference that the statute was adopted with knowledge of the French construction. See *Hunter* v. *Truckee Lodge,* 14 Nev. 24, 38–40. The earliest decision of the Spanish courts of which we are informed was in 1894, *Borrero* v. *Compañia Anonyma de la Luz Elec-*

---

[1] " That all laws, orders, regulations, and ordinances adopted and promulgated in the Canal Zone by order of the President for the government and sanitation of the Canal Zone and the construction of the Panama Canal are hereby ratified and confirmed as valid and binding until Congress shall otherwise provide."

*trica,* 1 Porto Rico Fed. 144, 147, long after the adoption of the statute by either Chile, Colombia or Panama. The presumption in respect of the adoption of the Spanish construction, therefore, has no foundation upon which to rest and must, likewise, be rejected. *Stutsman County* v. *Wallace,* 142 U. S. 293, 312.[2] We are not advised that the courts of Chile had construed the provision prior to its adoption by Panama; and it is asserted and not denied, that prior to its adoption by the Executive Order and congressional act, there had been no decision on the question by the courts of either Colombia or Panama.

It remains, then, only to inquire whether the asserted right of action exists in virtue of the language of the statute independently construed. Upon that question decisions of the various Spanish-speaking countries are of persuasive force only; and even that is overcome or greatly diminished when it is shown that the cognate statute in Porto Rico, and, for aught that appears to the contrary, in the other Spanish-speaking countries, is supported by procedural or other provisions lending aid to its construction as a death statute. In the *Borrero Case* (p. 146) it is said:

" Under the practice formerly existing in Porto Rico, in a proper case the law provided for, not only criminal proceedings, but for indemnification on account of the unlawful act to those entitled to it, all in the same proceeding; but those entitled to the civil indemnity could decline to proceed with the criminal action, and yet sue for civil liability. Article 16 of the Penal Code provided that one liable for a misdemeanor was also liable civilly. Both the penal and civil liability could be determined in the same proceeding; and article 123 provided: ' The ac-

---

[2] We have the authority of the *Hubgh Case* for the statement that the earlier Spanish law was to the contrary effect. 6 La. Ann. 510-511.

tion to demand restitution, reparation, or indemnification is also transmitted to the heirs of the person injured.' "

The Supreme Court of Louisiana in the *Hubgh Case, supra,* considering the similar provision in the Louisiana Code, held that it did not include a civil action for death. This conclusion was reached after submitting the language to the test of civil law as well as common law principles.

The Executive Order continued in force in the Canal Zone the laws of the land " with which the inhabitants are familiar;" and this, in effect, was ratified by the Act of Congress of 1912. Immediately following, the native population disappeared and the inhabitants of the Canal Zone since, largely American, have been only employees of the Canal and of those doing business in the Zone, who, it is to be presumed, were familiar with the rule of the common law rather than the construction said to have been put upon the statute by the various Spanish-speaking countries. As early as 1910, the Supreme Court of the Canal Zone declared that the courts of the Zone were " in duty bound to follow the rules of statutory construction of the courts of common law and ascertain by them the meaning and the spirit of the codes." *Kung Ching Chong* v. *Wing Chong,* 2 Canal Zone Supreme Court, 25, 30. In the later case of *Fitzpatrick* v. *The Panama Railroad Co.,* Id. 111, decided in 1913, the same court said (p. 121): "  . . .  if there is doubt or uncertainty as to the construction and interpretation of the laws here existing prior to February 26, 1904, the courts of the Canal Zone should accept and adopt that construction which more clearly harmonizes with the recognized principles of jurisprudence prevailing in the United States."

Under all the circumstances, we conclude that the reach of the statute is to be determined by the application of common law principles, *Panama R. R. Co.* v. *Bosse,* 249 U. S. 41, 45; and, applying these principles, it is clear that the general language of Art. 2341 does not include the

right of action here asserted. It would not be difficult to find generalizations of the common law quite as comprehensive in terms as the provision now under review— as, for example, " There is no wrong without a remedy ";[3] but, nevertheless, under the principles of the common law, it has required specific statutes to fix civil liability for death by wrongful act; and it is this requirement, rather than the construction put upon the statute in civil law countries, that the inhabitants of the Canal Zone are presumed to be familiar with, and which affords the rule by which the meaning and scope of the statute in question are to be determined.

*Judgment reversed.*

Mr. Justice Holmes, dissenting.

There is no dispute that the language of the Civil Code of Panama, Art. 2341, which has been quoted, is broad enough on its face to give an action for negligently causing the death of the plaintiff's wife. Taken literally it gives such an action in terms. The article of the Code Napoleon from which it is said to have been copied is construed by the French Courts in accord with its literal meaning. *La Bourgogne,* 210 U. S. 95, 138, 139. It would seem natural and proper to accept the interpretation given to the article at its source, and by the more authoritative jurists who have had occasion to deal with it, irrespective of whether that local interpretation was before or after its adoption by Spanish States, so long as nothing seriously to the contrary is shown. The only thing that I know of to the contrary is the tradition of the later common law. The common law view of the responsibility of a master for his servant was allowed to help in the interpretation of an ambiguous statute in

---

[3] The maxim was applied in *Like* v. *McKinstry,* 41 Barb. 186, 188, to support a right of action for slander of title to personal property.

*Panama R. R. Co.* v. *Bosse,* 249 U. S. 41, 45, for reasons there stated. But those reasons have far less application here, even if we refer to the common law apart from statute, and in any case are not enough to override the plain meaning of statutory words.

The common law as to master and servant, whatever may be thought of it, embodied a policy that has not disappeared from life. But it seems to me that courts in dealing with statutes sometimes have been too slow to recognize that statutes even when in terms covering only particular cases may imply a policy different from that of the common law, and therefore may exclude a reference to the common law for the purpose of limiting their scope. *Johnson* v. *United States,* 163 Fed. 30, 32. Without going into the reasons for the notion that an action (other than an appeal) does not lie for causing the death of a human being, it is enough to say that they have disappeared. The policy that forbade such an action, if it was more profound than the absence of a remedy when a man's body was hanged and his goods confiscated for the felony, has been shown not to be the policy of present law by statutes of the United States and of most if not all of the States. In such circumstances it seems to me that we should not be astute to deprive the words of the Panama Code of their natural effect.

The decision in the *Hubgh Case,* 6 La. Ann. 495, stands on nothing better than the classic tradition that the life of a free human being, (it was otherwise with regard to slaves,) did not admit of valuation, which no longer is true sentimentally, as is shown by the statutes, and which economically is false.

I think that the judgment should be affirmed.

The CHIEF JUSTICE, MR. JUSTICE McKENNA and MR. JUSTICE BRANDEIS concur in this opinion.