Paul Griffith GARLAND, as Administrator of the Estate of Bonnie Joan Garland, deceased, Paul Griffith Garland and Joan B. Garland, Plaintiffs-Appellees,

v.

Richard J. HERRIN, Defendant-Appellant.

No. 1341, Docket 83–7100.

United States Court of Appeals, Second Circuit.

Argued June 2, 1983.

Decided Dec. 8, 1983.

Russell M. Gioiella, New York City (Litman, Kaufman & Asche, New York City, of counsel), for defendant-appellant.

David T. Austern, Washington, D.C. (Gail E. Ross, Goldfarb, Singer & Austern, Washington, D.C., Boyle, Vogeler & Haimes, New York City, of counsel), for plaintiffs-appellees.

Before KAUFMAN, PRATT and GIBSON,* Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

The issue on appeal in this diversity action is whether under New York law parents may recover damages for emotional distress resulting from extreme and outrageous conduct that caused the death of their child. The district court, 554 F.Supp. 308, surveyed New York case law and concluded that, if presented with this case, the New York Court of Appeals would allow recovery. We can understand the district court's perception that justice should permit recovery in a case such as this. However, as Judge Kaufman observed in *Hausman v. Buckley,* 299 F.2d 696, 704–05 (2d Cir.), *cert.*

denied, 369 U.S. 885, 82 S.Ct. 1157, 8 L.Ed.2d 286 (1962):

> [T]he proper function of this Court is to ascertain what New York law is, and not to speculate about what it will be, or in Learned Hand's felicitous phrase, "to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant." *Spector Motor Service v. Walsh,* 139 F.2d 809, 823 (2d Cir.1943) (dissent), vacated 323 U.S. 101 [65 S.Ct. 152, 89 L.Ed. 101] (1944). It is certainly not our function to apply the rule we think better or wiser. (citation omitted).

As we read the applicable law, plaintiffs in New York cannot recover for the severe emotional distress their child's death caused them.

In July 1977 appellant Richard Herrin, a disappointed suitor, bludgeoned plaintiffs' daughter, Bonnie Joan Garland, with a hammer as she slept in her bedroom. Although her parents were sleeping in a room nearby, they were not awakened by Herrin's murderous assault on Bonnie. Battered but still alive, Bonnie was discovered by her mother the following morning and was rushed to a hospital where she died later that evening.

After Herrin was convicted of first degree manslaughter, Bonnie's parents brought this action to recover for emotional distress and for pecuniary injuries under New York's wrongful death statute, as well as for certain property damages.

By pretrial motions and stipulations, many of the claims were resolved prior to jury selection: the court dismissed two of the eight causes of action; plaintiffs withdrew two others; on two more, defendant consented to summary judgment for stipulated amounts of property damage; and defendant consented to partial summary judgment of liability on the statutory wrongful death claim. This left for trial the amount of damages for pecuniary injuries on the wrongful death claim, and issues of both liability and damages on plaintiffs' claims for infliction of emotional distress.

---

* Hon. Floyd R. Gibson of the Eighth Circuit Court of Appeals, sitting by designation.

On the wrongful death claim the parties stipulated at trial to the amounts of medical and funeral expenses, and left to the jury the general pecuniary loss suffered by plaintiffs as a result of the death of their daughter, an amount the jury fixed at $10,000. Neither side has appealed that determination.

On their claims for severe emotional distress, the focal point of this appeal, plaintiffs grounded their position on § 46 of the Restatement (Second) of Torts (1965), which provides in part that "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress * * *." At trial defendant conceded that he had engaged in "extreme and outrageous conduct". He also conceded that he had "recklessly" caused plaintiffs "severe emotional distress", but he denied that he had done so "intentionally".

While the district judge recognized that plaintiffs' right to recover was "very debatable", in the interest of sound judicial administration he decided to have the jury find the necessary facts by special verdicts, subject to his later review of the law. Therefore, in addition to the damages for pecuniary injuries under the wrongful death statute, the court had the jury determine whether defendant had acted "intentionally" toward each plaintiff, as well as the amount of damages resulting from the "severe emotional distress" to each plaintiff. The jury found that defendant had not acted intentionally, and it fixed $15,000 as the amount of damages for each plaintiff's emotional distress following the death of their daughter.

■ On plaintiffs' motion for entry of judgment, the court called for full briefing on the issue of defendant's liability for plaintiffs' emotional distress. In its decision authorizing entry of judgment, the court ignored defendant's contention that plaintiffs' claim is barred by New York's wrongful death statute, N.Y. Est. Powers & Trusts Law (EPTL) § 5–4.1 et seq. (McKinney 1981), and instead confined its discussion to the issue of whether New York recognizes, as an independent tort, extreme and outrageous conduct toward one individual that recklessly causes severe emotional distress to another. The district court concluded that New York does recognize such a cause of action. We think the district court erred in its interpretation of New York law on at least three critical points.

■ First, in reaching its conclusion, the court below extended the New York rule, which does permit recovery for "intentional" infliction of emotional distress, to include "reckless" infliction of emotional distress. It is true that § 46(1) of the Restatement describes the principle alternatively by permitting recovery when extreme and outrageous conduct "intentionally or recklessly" causes severe emotional distress. But those cases in New York with which we are familiar have permitted such a claim only when the harm was caused intentionally. Neither the court below nor plaintiffs' counsel has cited to us any New York court which has ever sustained such a claim when the wrongful conduct was, as here, reckless but not intentional.

We do not agree with the lower court that the decision by the New York State Court of Appeals in *Fischer v. Maloney*, 43 N.Y.2d 553, 402 N.Y.S.2d 991, 373 N.E.2d 1215 (1978), indicates that New York has completely "adopted" the analysis of § 46 of the Restatement and has thereby incorporated recklessness as an alternative standard for infliction of emotional distress. *Fischer* presented the question of whether plaintiff could recover for intentional infliction of emotional distress as the result of defendants having brought an unsuccessful defamation action against plaintiff. Discussing the claim generally, Judge Jones recognized that "[a]n action may lie for intentional infliction of severe emotional distress 'for conduct exceeding all bounds usually tolerated by decent society'", and he referred, in passing, to the rule as stated in § 46. However, the *Fischer* court ruled only on the question of whether defendants' commencement of the defamation action constituted conduct proscribed by the rule,

and the distinction between intentional and reckless conduct was not before it. As we read *Fischer,* it held merely that bringing an unsuccessful defamation action was not "conduct exceeding all bounds usually tolerated by decent society", nor was it "extreme and outrageous". In short, we find no solid authority that would allow this court to accept the lower court's interpretation of existing New York law as imposing on a defendant liability for inflicting emotional distress "recklessly", though not "intentionally".

The second error below was the court's conclusion that under New York law the right to recover for infliction of emotional distress extends to a "bystander". We need not review the gradual, grudging acceptance in New York of claims for psychic injuries, both to direct victims of wrongful acts, and to interested "bystanders", *i.e.,* those who to some degree would naturally be affected by what they had seen, what they had experienced, or merely by their empathy, concern, and grief over harm inflicted on a loved one. This complex and difficult problem was directly faced and thoroughly discussed by Judge Breitel of the New York Court of Appeals in *Tobin v. Grossman,* 24 N.Y.2d 609, 301 N.Y.S.2d 554, 249 N.E.2d 419 (1969), a case that presented the issue of whether a mother could recover for the consequences of shock and fear she experienced when her two-year-old child suffered serious injuries in an automobile accident. Judge Breitel noted that while text writers and commentators, including the Restatement, have pressed to extend tort liability in this area, "courts, for the most part, have refused to extend the duty of the negligent actor to cover the mother of the small child". *Id.* at 617, 301 N.Y.S.2d 554, 249 N.E.2d 419. He recognized that ultimately the issue is one of policy, and he left no doubt as to New York's position, at least with respect to negligent wrongs:

> Beyond practical difficulties there is a limit to attaining essential justice in this area. While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ram-

ifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. The risks of indirect harm from the loss or injury of loved ones is pervasive and inevitably realized at one time or another. Only a very small part of that risk is brought about by the culpable acts of others. This is the risk of living and bearing children. It is enough that the law establishes liability in favor of those directly or intentionally harmed.

*Id.* at 619, 301 N.Y.S.2d 554, 249 N.E.2d 419.

The New York position was summarized again in *Howard v. Lecher,* 42 N.Y.2d 109, 112, 397 N.Y.S.2d 363, 366 N.E.2d 64 (1974):

> No cause of action exists, irrespective of the relationship between the parties or whether one was a witness to the event giving rise to the direct injury of another, for the unintentional infliction of harm to a person solely by reason of that person's mental and emotional reaction to a direct injury suffered by another.

While these decisions reflect a firm line drawn in the New York emotional distress cases which bars any recovery by a person other than the one toward whom defendant's conduct was directed, we do not overlook that the New York Court of Appeals has not addressed this issue outside the context of negligence. Conceivably, that court might assess differently the delicate policy considerations if it were presented, as here, with severe emotional distress recklessly caused by extreme and outrageous conduct. We do note, however, that two of New York's Appellate Divisions have denied recovery for emotional distress caused by intentional injuries to the plaintiffs' loved ones. *Markowitz v. Fein,* 30 A.D.2d 515, 290 N.Y.S.2d 128 (1st Dept.1968) (plaintiffs who were neither the subjects of nor witnesses to the intentional tort were denied recovery for mental anguish and suffering); *Lauver v. Cornelius,* 85 A.D.2d 866, 446 N.Y.S.2d 456 (3d Dept. 1981) (parents of sexually molested children denied recovery for their own emotional harm).

**20**

Finally, the district court ignored entirely the rule under New York's wrongful death statute that limits a parent's recovery "for a wrongful act, neglect or default which caused the decedent's death", EPTL § 5–4.1, to "the pecuniary injuries resulting from the decedent's death", EPTL § 5–4.3. Since common law did not permit any civil action for causing the death of a human being, *Panama R. Co. v. Rock,* 266 U.S. 209, 45 S.Ct. 58, 69 L.Ed. 250 (1924); *Salsedo v. Palmer,* 278 F. 92 (2d Cir.1921); *Travelers' Insurance Co. v. Louis Padula Co.,* 224 N.Y. 397, 121 N.E. 348 (1918), when wrongful conduct causes death a survivor's right of action "depends wholly upon statutory authority." *Panama R. Co. v. Rock,* 266 U.S. at 211, 45 S.Ct. at 58. Ever since the wrongful death statute was first enacted in 1847, New York's courts have strictly construed it to exclude recovery for grief, loss of affection and fellowship, and loss of consortium. *See Liff v. Schildkrout,* 49 N.Y.2d 622, 427 N.Y.S.2d 746, 404 N.E.2d 1288 (1980); *see also Tilley v. Hudson River Railroad Co.,* 24 N.Y. 471, 475–77 (1862); *Loetsch v. New York City Omnibus Corp.,* 291 N.Y. 308, 52 N.E.2d 448 (1943).

As recently as 1980, the New York Court of Appeals declined an invitation to extend existing law by recognizing a surviving spouse's cause of action for loss of consortium due to death, and adhered to the New York rule "that all causes of action arising from the death of an individual must be maintained in accordance with statutory authority." *Liff v. Schildkrout,* 49 N.Y.2d at 631, 427 N.Y.S.2d 746, 404 N.E.2d 1288; *see Ratka v. St. Francis Hospital,* 44 N.Y.2d 604, 610–12, 407 N.Y.S.2d 458, 378 N.E.2d 1027 (1978). Similarly, in *Campbell v. Westmoreland Farm, Inc.,* 403 F.2d 939, 940 n. 1 (2d Cir.1968), we interpreted the New York statute to "specifically [limit] recovery in wrongful death actions to pecuniary damages resulting from decedent's death", and we noted that the section "has been construed by the New York courts to bar recovery for mental and emotional suffering." We conclude that the New York Court of Appeals would not at this time recognize plaintiffs' claims for damages re- sulting from the severe emotional distress caused by the death of their daughter.

Plaintiffs argue that their claim for severe emotional distress arose at the time of the assault and that it "does not even depend on their daughter's death". They contend that they suffered acutely while she lingered for several hours on the brink of death and that her actual dying only served to increase the emotional injury that resulted from the defendant's earlier tort against them. Unfortunately, we cannot here consider plaintiffs' claim for pre-death emotional distress, because this claim was effectively eliminated from the trial by the special verdicts submitted to the jury and by the court's charge, to which plaintiffs did not except. The damages found by the jury were in response to the question "What amount of damages do you find that [plaintiffs] sustained as a result of emotional distress *following the death* of Bonnie Garland?" (emphasis added). And in its instructions, the court charged the jury that defendant may be liable to the plaintiffs for "severe emotional distress caused [to them] by that death." The court further explained, "I caution you that you are dealing only with what resulted from the death of Bonnie. You cannot assess against the defendant damages for emotional problems, mental problems which existed independent of Bonnie's death." In these circumstances it seems clear that the damages assessed by the jury were focused only upon the emotional distress caused by Bonnie's death, and since those damages are not "pecuniary injuries" within the meaning of EPTL § 5–4.3, they are not compensable in New York.

To permit plaintiffs to recover in this action would not involve applying settled New York law to the facts, but instead would significantly extend its principles well beyond the limits of the reported New York cases. A federal court should not make such a policy-based extension of state law, a development better left to the state's own courts or its legislature. *Cornellier v. American Casualty Co.,* 389 F.2d 641, 644–45 (2d Cir.1968).

We conclude that plaintiffs' claims for emotional distress recklessly inflicted upon them by defendant's extreme and outrageous conduct of bludgeoning their daughter, causing her death, are not actionable, because (1) New York has not permitted recovery for emotional distress inflicted recklessly but not intentionally; (2) New York does not permit a "bystander" to recover for psychic injury resulting from harm inflicted on another; and (3) even if New York law permitted both of the foregoing, when the harm causes death, the plaintiffs' recovery is limited to those pecuniary injuries authorized by New York's wrongful death statute. Consequently, the judgment, insofar as it is appealed from, is reversed, and the action is remanded with a direction to dismiss plaintiffs' claims for damages for emotional distress.