## CHENEY BROS. v. DORIS SILK CORPORATION.

Circuit Court of Appeals, Second Circuit.
October 21, 1929.

No. 89.

Harry D. Nims, of New York City (Minturn De S. Verdi and Wallace H. Martin, both of New York City, on the brief), for appellant.

Epstein & Bros., of New York City (Arthur J. Brothers, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge. The plaintiff, a corporation, is a manufacturer of silks, which puts out each season many new patterns, designed to attract purchasers by their novelty and beauty. Most of these fail in that purpose, so that not much more than a fifth catch the public fancy. Moreover, they have only a short life, for the most part no more than a single season of eight or nine months. It is in practice impossible, and it would be very onerous if it were not, to secure design patents upon all of these; it would also be impossible to know in advance which would sell well, and patent only those. Besides, it is probable that for the most part they have no such originality as would support a design patent. Again, it is impossible to copyright them under the Copyright Act (17 USCA § 1 et seq.), or at least so the authorities of the Copyright Office hold. So it is easy for any one to copy such as prove successful, and the plaintiff, which is put to much ingenuity and expense in fabricating them, finds itself without protection of any sort for its pains.

Taking advantage of this situation, the defendant copied one of the popular designs in the season beginning in October, 1928, and undercut the plaintiff's price. This is the injury of which it complains. The defendant, though it duplicated the design in question, denies that it knew it to be the plaintiff's, and there thus arises an issue which might be an answer to the motion. However, the parties wish a decision upon the equity of the bill, and, since it is within our power to dismiss it, we shall accept its allegation, and charge the defendant with knowledge. ▆▆ The plaintiff asks for protection only during the season, and needs no more, for the designs are all ephemeral. It seeks in this way to disguise the extent of the pro-

posed innovation, and to persuade us that, if we interfere only a little, the solecism, if there be one, may be pardonable. But the reasoning which would justify any interposition at all demands that it cover the whole extent of the injury. A man whose designs come to harvest in two years, or in five, has prima facie as good right to protection as one who deals only in annuals. Nor could we consistently stop at designs; processes, machines, and secrets have an equal claim. The upshot must be that, whenever any one has contrived any of these, others may be forbidden to copy it. That is not the law. In the absence of some recognized right at common law, or under the statutes—and the plaintiff claims neither—a man's property is limited to the chattels which embody his invention. Others may imitate these at their pleasure. Flagg Mfg. Co. v. Holway, 178 Mass. 83, 59 N. E. 667; Keystone Co. v. Portland Publishing Co., 186 F. 690 (C. C. A. 1); Heide v. Wallace, 135 F. 346 (C. C. A. 3); Upjohn Co. v. Merrell Co., 269 F. 209 (C. C. A. 6); Hudson Co. v. Apco Co. (D. C.) 288 F. 871; Crescent Tool Co. v. Kilborn & Bishop Co., 247 F. 299 (C. C. A. 2); Hamilton Co. v. Tubbs Co. (D. C.) 216 F. 401; Montegut v. Hickson, 178 App. Div. 94, 164 N. Y. S. 858.

This is confirmed by the doctrine of "nonfunctional" features, under which it is held that to imitate these is to impute to the copy the same authorship as the original. Enterprise Co. v. Landers, 131 F. 240 (C. C. A. 2); Yale & Towne Co. v. Adler, 154 F. 37 (C. C. A. 2); Rushmore v. Manhattan Co., 163 F. 939, 19 L. R. A. (N. S.) 269 (C. C. A. 2); Rushmore v. Badger Co., 198 F. 379 (C. C. A. 2); Fox v. Glynn, 191 Mass. 344, 78 N. E. 89, 9 L. R. A. (N. S.) 1096, 114 Am. St. Rep. 619. These decisions imply that, except as to these elements, any one may copy the original at will. Unless, therefore, there has been some controlling authority to the contrary, the bill at bar stands upon no legal right and must fail.

Of the cases on which the plaintiff relies, the chief is International News Service v. Associated Press, 248 U. S. 215, 39 S. Ct. 68, 63 L. Ed. 211, 2 A. L. R. 293. Although that concerned another subject-matter— printed news dispatches—we agree that, if it meant to lay down a general doctrine, it would cover this case; at least, the language of the majority opinion goes so far. We do not believe that it did. While it is of course true that law ordinarily speaks in general terms, there are cases where the occasion is at once the justification for, and the limit of, what is decided. This appears to us such an instance; we think that no more was covered than situations substantially similar to those then at bar. The difficulties of understanding it otherwise are insuperable. We are to suppose that the court meant to create a sort of common-law patent or copyright for reasons of justice. Either would flagrantly conflict with the scheme which Congress has for more than a century devised to cover the subject-matter.

Qua patent, we should at least have to decide, as tabula rasa, whether the design or machine was new and required invention; further, we must ignore the Patent Office whose action has always been a condition upon the creation of this kind of property. Qua copyright, although it would be simpler to decide upon the merits, we should equally be obliged to dispense with the conditions imposed upon the creation of the right. Nor, if we went so far, should we know whether the property so recognized should be limited to the periods prescribed in the statutes, or should extend as long as the author's grievance. It appears to us incredible that the Supreme Court should have had in mind any such consequences. To exclude others from the enjoyment of a chattel is one thing; to prevent any imitation of it, to set up a monopoly in the plan of its structure, gives the author a power over his fellows vastly greater, a power which the Constitution allows only Congress to create.

The other cases are easily distinguishable. Board of Trade v. Christie, 198 U. S. 236, 25 S. Ct. 637, 49 L. Ed. 1031, went upon the fact that the defendants had procured their information through a breach of contract between the plaintiff and its subscribers, or some surreptitious and dishonest conduct. Hunt v. N. Y. Cotton Exchange, 205 U. S. 322, 27 S. Ct. 529, 51 L. Ed. 821, was another instance of the same kind. There is, indeed, language in National Tel. News Co. v. West. Un. Tel. Co., 119 F. 294, 60 L. R. A. 805 (C. C. A. 7), which goes further, but we take it that the authoritative statement of the doctrine must be found in Board of Trade v. Christie (Board of Trade v. Tucker) 221 F. 305 (C. C. A. 2). Though the limitations there imposed have indeed been extended in International News Service v. Associated Press, they still comprise no more than cases involving news and perhaps market quotations. Prest-O-Lite v. Bogen (C. C.) 209 F. 915, and Prest-O-Lite v. Davis (D. C.) 209 F. 917, were cases of passing off. In Kiernan v. Manhattan Co., 50 How. Prac. (N. Y.) 194, Dodge v. Construction Co., 183 Mass. 63, 66 N. E. 204, 60 L. R. A. 810, 97 Am. St. Rep. 412; Exchange Co.

v. Gregory, L. R. (1896) 1 Q. B. 147 (C. A.) and Exchange Co. v. Central News, L. R. (1897) 2 Ch. 48, again, either there was a breach of contract between the plaintiff and its subscriber, or the defendant had dishonestly procured the information. They are like Board of Trade v. Christie.

True, it would seem as though the plaintiff had suffered a grievance for which there should be a remedy, perhaps by an amendment of the Copyright Law, assuming that this does not already cover the case, which is not urged here. It seems a lame answer in such a case to turn the injured party out of court, but there are larger issues at stake than his redress. Judges have only a limited power to amend the law; when the subject has been confided to a Legislature, they must stand aside, even though there be an hiatus in completed justice. An omission in such cases must be taken to have been as deliberate as though it were express, certainly after long-standing action on the subject-matter. Indeed, we are not in any position to pass upon the questions involved, as Brandeis, J., observed in International News Service v. Associated Press. We must judge upon records prepared by litigants, which do not contain all that may be relevant to the issues, for they cannot disclose the conditions of this industry, or of the others which may be involved. Congress might see its way to create some sort of temporary right, or it might not. Its decision would certainly be preceded by some examination of the result upon the other interests affected. Whether these would prove paramount we have no means of saying; it is not for us to decide. Our vision is inevitably contracted, and the whole horizon may contain much which will compose a very different picture.

The order is affirmed, and, as the bill cannot in any event succeed, it may be dismissed, if the defendant so desires.