For former opinion, see 78 F.2d 700.

Edmund B. Whitcomb, of Toledo, Ohio, for plaintiff.

Theodore S. Kenyon, of New York City, for defendant.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

PER CURIAM.

■ We decided these appeals in 1935 (2 Cir., 78 F.2d 700) but granted a rehearing because of the disqualification of one member of the original court, not known at the time. The case is in two parts: unfair competition, and patent infringement. As to the first, we need add nothing to what we said before; it is difficult to imagine a more open attempt to secure the monopoly of an industry without the aid of a patent. There is nothing unlawful in copying the unpatented products of another dealer down to the last detail, except in so far as the resulting similarity may become a means of securing his customers through their belief, so induced, that your goods are his. Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 247 F. 299; Cheney Bros. v. Doris Silk Corp., 2 Cir., 35 F.2d 279. The conditions of marketing in the case at bar precluded any such possibility, for car owners do not see the replacing parts when they are put into the machine, and would not recognize them as the plaintiff's if they did. The defendant is not responsible for substitutions made by unscrupulous repairmen, if it does nothing to further their practices. Miller Rubber Co. v. Behrend, 2 Cir., 242 F. 515, 518; Krem-Ko Co. v. R. G. Miller & Sons, 2 Cir., 68 F.2d 872.

■ The alleged patent infringements were of two classes: (1) the replacement of new, for worn-out, parts in distributors and other ignition devices, sold by the plaintiff and others; and (2) the direct infringement of the Wollenweber patent (No. 1,669,888). As to the first, so far as the defendant's "breaker-arms" and the like replaced worn-out parts of apparatus sold by the plaintiff, the sales were not infringements at all. The plaintiff's argument appears to be that when a "contact point", for example, is worn out, the buyer is licensed to replace only that, though to do so will cost more than to buy and install the "breaker-arm" which contains it. In Automotive Equipment Co. v. Connecticut T. & E. Co., 19 F.2d 990, the Third Circuit had exactly that situation before it, and held that it was an infringement to substitute the "breaker-arm", but we understand that that was because it was cheaper to put in the point. Alhough that seems surprising as matter of fact, the decision need not embarrass us, for we agree that if the repairman puts in a "breaker-arm" merely to run up a larger bill, it is not within the scope of the implied license, though even then the maker may not be liable. Be that as it may, there is no evidence of that sort in this record; "breaker-arms" sell for less than a dollar, and it is not to be gratuitously assumed that the trade practice was merely sabotage to raise the cost. The theory on which the repair of a patented article is allowed at all is that the patentee intends the buyer to have a longer use of it than the life of the shortest-lived part. Wilson v. Simpson, 9 How. 109, 126, 13 L.Ed. 66; Heyer v. Duplicator Mfg. Co., 263 U.S. 100, 44 S. Ct. 31, 68 L.Ed. 189. While in the nature of things there can be no rule as to where repair ends and reconstruction begins, clearly the implied license must be understood to cover a reasonable enjoyment of the privilege; and if it is cheaper to insert a new part than to cobble the old one back into service, the license covers just that; if it did not, the very presupposition on which it rests would be falsified.

In addition to the supply of new parts for apparatus sold by the plaintiff, it charges the defendant with supplying repair parts for infringing articles sold by others. It is of course true that as to these the plaintiff gave no implied license, and, if the evidence stopped there, we should have to consider the validity of the patents. But, when scrutinized, the charge becomes baseless, and merely serves further to illustrate the plaintiff's purpose to centre in itself a monopoly of the whole business. The only evidence that the defendant has furnished repair parts to the users of infringing apparatus concerns "Delco-Remy" and "Northeast" parts, sold by the United Motors Service, a branch of the Delco Remy Corporation. The plaintiff, in conjunction with that company and four others, got up and published a joint catalogue for the year 1932, in which appear, side by side, the "service parts" of both companies. The sale of parts, jointly advertised in this way, certainly could not be an infringement, and the defendant could not in its turn be a contributory infringer, unless it were. The plaintiff also vaguely charges that the defendant sells repair parts for apparatus sold by still other manufacturers, but we can find nothing in the record to support the assertion. It is apparent that the whole

point is an afterthought anyway; the judge did not mention it in his opinion, it does not appear in the assignments of error, and the bill of particulars mentioned only "Delco-Remy" and "Northeast" parts.

Finally, we think that claims 3 and 11 of Wollenweber's patent are not valid over Ericson (No. 1,385,368) and Schwarze (No. 1,286,803); and we can see no reason to add to the discussion of that question in our earlier opinion.

Other points are raised, but they too were adequately dealt with before. After carefully going over the case again, we can find no reason to change our first disposition of it.

Decree reversed; bill dismissed.

Circuit Court of Appeals, Second Circuit.
Feb. 13, 1940.