## HODGSON et al. v. FIFTH AVENUE PLASTICS, Inc., et al.

United States District Court
S. D. New York.

Nov. 17, 1950.

Rogge, Fabricant, Gordon & Goldman, New York City (Murray A. Gordon, New York City, of counsel), for plaintiffs.

Holland, Armstrong, Bower & Carlson, New York City (John M. Cole, Norman N. Holland and Thomas M. Cooney, all of New York City, of counsel), for defendants.

RYAN, District Judge.

Plaintiffs move for an injunction pendente lite to restrain defendants from continuing to engage in the alleged infringement of plaintiffs' trade-mark "Silly Putty", and in alleged unfair competition.

Jurisdiction is claimed under the Federal Trade-Mark Act, 15 U.S.C.A. § 1121, and by reason of diversity. It appears to be unchallenged that the trade-mark "Silly Putty" has not been registered, although an application for registration is now pending in the Patent Office. Jurisdiction is, therefore, based solely on diversity; the suit is for protection of an alleged common law trade-mark and for unfair competition.

Both plaintiffs and defendants market an organo-silicone compound which possesses certain unusual characteristics; making it attractive as a novelty toy and entertainment device. The interesting substance is soft and pliable; gently pulled, it stretches; rudely pulled, it breaks; rolled tightly into a sphere shape, it bounces like a ball; struck sharply, it shatters; pressed over fresh newsprint, it absorbs ink oils and reproduces the print in reverse; left at rest, it liquifies and levels off. It has amused many, the young and the older (including a certain jurist, in his idle moments). The compound has, however, other more useful purposes, and was developed as a result of wartime research by Dow Corning Corporation and General Electric Company. Beginning in the fall of 1944, it was widely publicized in trade papers as well as in magazines circulated among and read by the general public. It was commonly called and known as "bouncing putty." It may be generally purchased from either the Dow or G. E. company, at approximately $5 per pound.

Plaintiffs place a small wad of this silicone compound in individual, bisected, colored, plastic eggs, and attach, by a bright red ribbon characteristically designed, circular, heavy paper tags bearing the imprint "Silly Putty." The egg sells for $1 in the regular size, and for $2 for the larger size. The eggs and their content are marketed to the retailer in cardboard, egg cartons in common use throughout the egg industry and identical to those seen in grocery and dairy stores. The trade-mark is not registered, and neither the plastic egg nor its container is protected by a design patent; the tag used is not the subject of either a design patent or copyright.

Defendants' product is also a wad of this compound in an individual, biseted, plastic egg in appearance identical to that employed by plaintiffs. On the former's egg, there is firmly attached to the exterior of it by a silver colored, plastic adhesive strip a thin paper, rectangular label on which is prominently printed the mark "Crazy Stuff". Their product retails for $.69. Defendants have long been in the toy and novelty business, but have marketed "Crazy Stuff" since May, 1950, only.

There is no evidence that defendants have affirmatively misrepresented their product

162

as that of plaintiffs. The proof submitted does not convince me that defendants' compound is inferior in its peculiar qualities to that of plaintiffs. Neither one manufactures the compounds used; plaintiffs purchase from General Electric and defendants from Dow Corning.

The name "Crazy Stuff" does not phonetically resemble the name "Silly Putty"; the tags employed by defendants do not imitate or resemble plaintiffs' in color, size, form, layout or print. Visually, no confusion arises even from a casual glance of the two tags. The mental connotations conveyed by the named "Silly Putty" and "Crazy Stuff" are not misleading or confusing.

Plaintiffs' eggs are neither unique nor novel, in form or design. They may be bought by any one in New York City for a nominal price, and have been advertised since 1948 for sale to the trade. The same is true of the cardboard carton.

Plaintiffs seek by this action to secure the exclusive right to the use of the bisected, plastic egg for the packaging and subsequent marketing of silicone compound for novelty, toy and amusement purposes. Such a claim to an article so common place and so frequently used as an egg-shaped container may not be successfully asserted, upon plaintiffs' brief and limited commercial use, even though it be confined to silicone.

They urge that since July, 1949, their sales have been in excess of $60,000; the exact amount and a breakdown by months is not given, but it is stated that most of the sales were made within two very recent months—September and October, 1950. With their sales spread throughout forty states of the country, Puerto Rico, Honolulu and British Columbia, as well as through other countries, it is not probable that the egg-shaped container became so associated with plaintiffs' product that the sight of it brought to mind plaintiffs' "Silly Putty."

Plaintiffs have failed to prove that their product and the plastic egg container in which it is sold has acquired a secondary meaning. Swanson Mfg. Co. v. Feinberg-

Henry Mfg. Co., 2 Cir., 147 F.2d 500, 503; Lucien Lelong, Inc. v. Lander Co., 2 Cir., 164 F.2d 395, 397; Lewis v. Vendome Bags, 2 Cir., 108 F.2d 16, 18.

 Plaintiffs have made no showing of defendants' inability to respond in money damages for any injury it may be found that they have done to plaintiffs, nor is there evidence to sustain a finding at this time that they are now or before trial, likely to sustain irreparable damage requiring or justifying injunctive relief.

The motion is denied.