SMITH, KLINE & FRENCH LABORATOR-
IES v. MIDWEST CHEMICAL DE-
VELOPMENT CORP. et al.

No. 27368.

United States District Court
N. D. Ohio, E. D.

Feb. 20, 1951.

F. O. Richey, H. F. Schneider, Cleveland, Ohio, George J. Harding, Philadelphia, Pa., for plaintiff.

Bruce B. Krost of Woodling & Krost, Cleveland, Ohio, Howard Hirsch, Cleveland, Ohio, for defendant.

FREED, District Judge.

This is an action for unfair competition in which the plaintiff seeks injunctive relief and an accounting.

In substance, the following factual situation is presented. Plaintiff is a pharmaceutical house which markets amphetamine sulfate tablets under the trade-mark "Benzedrine" and dextro-amphetamine sulfate tablets under the trade-mark "Dexedrine". These products are sold in labeled packages to wholesale drug distributors who, in turn, sell to retail druggists. The retailer dispenses these drugs in his own package on the prescription of a physician.

Prior to May 1949, the plaintiff marketed Benzedrine as round, white, single and double scored tablets; Dexedrine, as round, yellow, single scored tablets. In that month, the plaintiff commenced to market Benzedrine in a so-called "heart shape" with a pinkish color and Dexedrine in a similar shape and with an orange color.

The plaintiff alleges that these colors and this shape were wholly nonfunctional and were adopted so that its tablets might be readily distinguished from tablets of the same chemical composition marketed by others. Plaintiff extensively advertised the new appearance of its products, and alleges that the tablets as they presently appear are well-known to the drug trade, the medical profession and the consuming public and are identified as the product of the plaintiff.

The plaintiff charges that the defendants, jointly and severally, about March 15, 1950, began to manufacture and to market these drugs in tablets which closely imitate the distinctive color and shape adopted by the plaintiff, that this was done for the purpose of inducing and enabling others to palm off these tablets as the tablets of the plaintiff, and that such palming off has occurred.

The corporate defendant moves to dismiss the complaint for failure to state a claim, and alternatively, for summary judgment. The individual defendants move to dismiss the complaint for failure to state a

claim upon which relief can be granted. The motion for summary judgment is based on the complaint and depositions of the individual defendants and another individual associated with the defendant corporation which were taken by the plaintiff.

The corporate defendant relies on the deposition testimony which relates that Midwest merely manufactured pills for its customer, Heart Pharmaceutical Corporation, and for Heart alone. In fact it appears that Heart furnished the necessary machinery for the manufacture of the pills. The position of the defendant is this: "The *sole* charge against Midwest is that as a manufacturer, it duplicated certain tablets to a customer's order and supplied those duplicate tablets to its one customer in bottles bearing the customer's name. There is a complete absence of any other activity by Midwest. There is good authority as well as sound reasoning for the view that the act of duplication in itself is not actionable."

 The motion for summary judgment is a method by which litigants may test issues of law raised by facts which are not in issue. These facts may be established by the pleadings, depositions, affidavits, or admissions. If it appears that one party is entitled to judgment as a matter of law, the Court may enter such judgment. Rule 56, Federal Rules of Civil Procedure, 28 U. S.C.A.

 Assuming that the depositions prove conclusively that Midwest has not made any representations to druggists, or in any way induced druggists to "palm off" these pills, the fallacy of defendants' position at once becomes obvious. Unfair competition takes place in many various forms, only one of which is the active solicitation of deception by druggists. Another form of unfair competition, and that upon which plaintiff relies, is what is popularly termed contributory infringement or contributory unfair competition. A manufacturer, who places into the hands of his immediate purchaser, goods which he knows may cause deception, is liable for unfair competition. Andrew Jergens Co. v. Bonded Products

Corp., 2 Cir., 1927, 21 F.2d 419; 2 Nims, Unfair Competition (4th ed. 1947) § 284; See also William R. Warner & Co. v. Eli Lilly & Co., 1924, 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161; New England Awl & Needle Co. v. Marlborough Awl & Needle Co., 1897, 168 Mass. 154, 46 N.E. 386.

The complaint charges that plaintiff has created a demand, on behalf of the buying public, for its products because of their distinctiveness; that defendants have manufactured identical pills; that defendant had knowledge of an established market for plaintiff's distinctive pills; that defendant intended that the public be deceived and plaintiff injured thereby; and that such deception or "palming off" has occurred. These averments are not negated by the depositions in the record. Thus, in these respects, there are genuine issues as to material facts which proscribe the granting of the motion for summary judgment. To resolve, before all the facts are developed, that there was no demand for plaintiff's distinctive pills or that defendants' imitation did not cause deception would be premature in view of the disputed issues of fact.

 Though termed a motion to dismiss, the individual defendants rely on their depositions taken by the plaintiff. Such motion shall therefore be treated as one for summary judgment, Rule 12(b).

Defendants contend that the testimony adduced at the deposition hearing proves that these individuals were merely officers, directors, stockholders, or employees of the corporation and consequently they are in no way responsible for the actions of the corporation. No authorities are cited to support this conclusion.

 This position is unsound. The complaint charges that the defendants individually participated in the fraud. If true, they may not avoid the consequences of their conduct by hiding behind the corporation. To determine, at this stage of the proceeding, that the individual defendants are free from wrongdoing would be impossible. The mere assertion that the individual defendants did not commit the

800

wrongs charged in the complaint cannot be accepted as a complete defense. A complete disclosure of the factual situation at the time of trial will resolve the liability of the individual defendants.

The motions will be overruled.