**HAEGER POTTERIES, Inc.**

v.

**GILNER POTTERIES.**

Civ. No. 16391.

United States District Court,
S. D. California, C. D.
June 28, 1954.

Fulwider, Mattingly & Babcock, Robert W. Fulwider, Los Angeles, Cal. (Curtis F. Prangley and Moore, Prangley & Clayton, Chicago, Ill., of counsel), for plaintiff.

Victor E. Kaplan, Los Angeles, Cal., for defendant.

MATHES, District Judge.

Plaintiff invokes the equity jurisdiction of this court, Briggs v. United Shoe etc. Co., 1915, 239 U.S. 48, 50, 36 S.Ct. 6, 60 L.Ed. 138; Rees v. City of Watertown, 1873, 19 Wall. 107, 86 U.S. 107, 122, 22 L.Ed. 72, under certain provisions of the Lanham Trade-Mark Act, 15 U.S.C.A. §§ 1121, 1125, 1126(b)(1–2), (g–i), and upon the ground of diversity of citizenship, 28 U.S.C. § 1332; Suttle v. Reich Bros. Const. Co., 1948, 333 U.S. 163, 166, 68 S.Ct. 587, 92 L.Ed. 614; cf. Blake v. McClung, 1898, 172 U.S. 239, 259, 19 S.Ct. 165, 43 L.Ed. 432, seeking an injunction and damages for alleged unfair competition in and affecting interstate commerce. Cf. U. S. Printing etc. Co. v. Griggs etc. Co., 1929, 279 U.S. 156, 158, 49 S.Ct. 267, 73 L.Ed. 650; Dad's Root Beer Co. v. Doc's Beverages, 2 Cir., 1951, 193 F.2d 77, 81–82.

The complaint alleges *inter alia* that defendant has exactly copied except for quality of craftsmanship, and is foisting upon the trade and the public in unfair competition with plaintiff, certain distinctive art pottery ash trays previously and currently designed, manufactured and sold by plaintiff.

The cause is now before the court upon plaintiff's application for a preliminary injunction pursuant to Rule 65, Fed.Rules Civ.Proc. rule 65, 28 U.S.C.A., and defendant's motion to dismiss for failure to state a claim upon which relief can be granted or, in the alternative, for a more definite statement. Fed. Rules Civ.Proc. rule 12(b)(6), (e), 28 U.S.C.A.

The case does not involve any claimed right to a trade name, registered or unregistered, see: Cal.Business and Professions Code, § 14400 et seq.; Stork Restaurant v. Sahati, 9 Cir., 1948, 166 F.2d 348, or to a trade mark, registered or unregistered, see: 15 U.S.C.A. § 1051;

Cal.Bus. & Prof.Code, § 14200 et seq.; Sunbeam Furniture Corp. v. Sunbeam Corp., 9 Cir., 191 F.2d 141, upon petition for rehearing, id., 1951, 191 F.2d 731; Sunbeam Corp. v. Sunbeam Lighting Co., D.C., 83 F.Supp. 429, affirmed in part and reversed in part, 9 Cir., 1950, 183 F.2d 969, certiorari denied, 1951, 340 U.S. 920, 71 S.Ct. 357, 95 L.Ed. 665, or to a copyright, 17 U.S.C. § 1, or a design patent, 35 U.S.C. § 171. See: Mazer v. Stein, 1954, 347 U.S. 201, 74 S.Ct. 460; Stein v. Rosenthal, D.C.S.D.Cal.1952, 103 F. Supp. 227, affirmed, 9 Cir., 1953, 205 F.2d 633.

The only claim asserted by plaintiff is for unfair competition in the sale of art pottery ash trays, cf. Briddell v. Alglobe Trading Co., 2 Cir., 1952, 194 F.2d 416, unrelated to any claim under the copyright, patent or trade-mark laws. Cf. 28 U.S.C. § 1338(b); Looz v. Ormont, D.C.S.D.Cal.1953, 114 F.Supp. 211, 216–218; Block v. Plaut, D.C.N.D. Ill.1949, 87 F.Supp. 49, 50.

Upon disapproving the doctrine of Swift v. Tyson, 1842, 16 Pet. 1, 41 U.S. 1, 10 L.Ed. 865, in the far-reaching decision of Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 78–80, 58 S.Ct. 817, 82 L.Ed. 1188, the Court reaffirmed that: "There is no federal general common law." 304 U.S. at page 78, 58 S.Ct. at page 822; cf. Western Union Tel. Co. v. Call Pub. Co., 1901, 181 U.S. 92, 100–103, 21 S.Ct. 561, 45 L.Ed. 765; Smith v. State of Alabama, 1888, 124 U.S. 465, 478–479, 8 S.Ct. 564, 31 L.Ed. 508; Wheaton v. Peters, 1834, 8 Pet. 591, 33 U.S. 591, 657–658, 8 L.Ed. 1055.

As explained in Erie R. Co. v. Tompkins: "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. * * * There is no federal general common law. Congress has no power to declare substantive rules of common law applicable in a state whether they be local in their nature or 'general,' be they commercial law or a part of the law of torts. And no clause in the Constitution purports to confer such a power upon the federal courts." 304 U.S. at page 78, 58 S.Ct. at page 822; and see: Cities Service Oil Co. v. Dunlap, 1939, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196; Ruhlin v. New York Life Ins. Co., 1938, 304 U.S. 202, 205, 58 S.Ct. 860, 82 L.Ed. 1290.

So thereafter and until passage of the Lanham Trade-Mark Act of July 5, 1946, 60 Stat. 427, 15 U.S.C.A. §§ 1051–1127, effective July 5, 1947, § 46(a), it had been regarded as settled that causes of action for unfair competition not arising under a federal statute are governed by state law. See: Pecheur Lozenge Co. v. National Candy Co., 1942, 315 U.S. 666, 667, 62 S.Ct. 853, 86 L.Ed. 1103; Fashion Originators Guild v. Federal Trade Commission, 1941, 312 U.S. 457, 468, 61 S.Ct. 703, 85 L.Ed. 949; Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 1938, 305 U.S. 315, 325, 336, 59 S.Ct. 191, 83 L.Ed. 195; Campbell Soup Co. v. Armour & Co., 3 Cir., 175 F.2d 795, 797, certiorari denied, 1949, 338 U.S. 847, 70 S.Ct. 83, 94 L.Ed. 518; Time, Inc. v. Viobin Corp., 7 Cir., 128 F.2d 860, certiorari denied, 1942, 317 U.S. 673, 63 S.Ct. 78, 87 L.Ed. 540; National Fruit Product Co. v. Dwinell-Wright Co., D.C.Mass. 1942, 47 F.Supp. 499, affirmed, 1 Cir., 1944, 140 F.2d 618; Chafee, Unfair Competition, 53 Harv.L.Rev. 1289, 1299 (1940).

Concededly plaintiff has no actionable claim of substantive right under any federal statute unless the Lanham Act gives a federal cause of action to "any plaintiff with whose interstate commerce the defendant has unfairly competed." Cf. American Auto Ass'n v. Spiegel, 2 Cir., 205 F.2d 771, 775, certiorari denied, 1953, 346 U.S. 887, 74 S.Ct. 138; Briddell v. Alglobe Trading Co., supra, 194 F.2d at page 421.

If plaintiff's claim does arise under the Lanham Act, jurisdiction is expressly conferred upon this court "without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties." 15 U.S.C.A. § 1121.

It is urged that Stauffer v. Exley, 9 Cir., 1950, 184 F.2d 962, and more recently Pagliero v. Wallace China Co., 9 Cir., 1952, 198 F.2d 339, serve as authority for the contention that plaintiff at bar asserts a federal cause of action arising under the Lanham Act.

Stauffer v. Exley involved a claim of unfair competition consisting in the use of "the unregistered trade name 'Stauffer System' in interstate commerce * * *." 184 F.2d at page 963. And the Court held that by according "the same benefits as are granted" to beneficiaries of conventions or treaties to which the United States is a party, 15 U. S.C.A § 1126(i), (b), the Lanham Act gives "Citizens or residents of the United States", id. § 1126(i), having unregistered "Trade names or commercial names", id. § 1126(g), "used in commerce", id. § 1051, a federal cause of action for unfair competition in respect to such unregistered names, with "the remedies provided * * * for infringement of [registered] marks * * * so far as they may be appropriate in repressing acts of unfair competition. * * *" Id. § 1126(h); See Chamberlain v. Columbia Pictures Corp., 9 Cir., 1951, 186 F.2d 923, 924; In re Lyndale Farm, 1951, 186 F.2d 723, 726–727, 38 C.C.P.A., Patents, 825; Old Reading Brewery v. Lebanon Valley Brewing Co., D.C.M.D.Pa.1952, 102 F.Supp. 434, 437–438.

■ Comprehensive statutory remedies are provided in the Act "for infringement of marks". See: S. C. Johnson & Son v. Johnson, 2 Cir., 1949, 175 F.2d 176; 15 U.S.C.A. § 1126(h). These remedies include broad injunctive relief as well as damages, for infringement and for unfair competition in the use of any registered mark. Id. §§ 1114–1120. It is to be noted that these federal statutory remedies apply only to a registered mark; and the term "mark" is defined, unless the contrary is plainly apparent from the context, as including "any trade-mark, service mark, collective mark, or certification mark entitled to

registration * * * whether registered or not." Id. § 1127.

■ In the language of the Act, unfair competition in the use of a mark consists in any use intended or likely "to cause confusion or mistake or to deceive purchasers as to the source of [sic] origin of * * * goods or services * * *." Id. § 1114(1) (a). This is in essence the common-law concept of unfair competition as applied to the use of trade-marks and trade names as well as other business conduct. See: Steele v. Bulova Watch Co., 1952, 344 U.S. 280, 73 S.Ct. 252, 97 L.Ed. 252; cf. American Steel Foundries v. Robertson, 1926, 269 U.S. 372, 380–384, 46 S.Ct. 160, 70 L.Ed. 317; Hanover Star Milling Co. v. Metcalf, 1916, 240 U.S. 403, 412–413, 36 S. Ct. 357, 60 L.Ed. 713; Elgin National Watch Co. v. Illinois Watch Case Co., 1901, 179 U.S. 665, 673–674, 21 S.Ct. 270, 45 L.Ed. 365; Restatement, Torts, §§ 708–756 (1938).

■ It thus appears to be the holding in Stauffer v. Exley that "Citizens or residents of the United States", 15 U.S.C.A. § 1126(i), owning "trade names" or "commercial names", id. § 1127, "whether or not they form parts of marks", id. § 1126(g), and whether such names be anywhere registered or unregistered, id. 1126(a) (g), are given a federal cause of action under the Lanham Act for unfair competition in the use of such names, with the same remedies as provided in the Act for infringement of registered marks, cf. Hodgson v. Fifth Ave. Plastics, D.C.S.D.N.Y.1950, 94 F.Supp. 160 "available so far as they may be appropriate in repressing acts of unfair competition" in the use of such names. Id. § 1126(h).

In Pagliero v. Wallace China Co., supra, 198 F.2d 339, the preliminary injunction issued by the District Court restrained defendants (1) "from '* * * disposing of china bearing patterns deceptively similar to those originated by plaintiff'", and (2) "'from using plaintiff's trade names or trade-marks * * * in the identification of hotel chinaware

manufactured and sold by the defendants'." 198 F.2d at page 341.

Upon appeal the Circuit Court ordered the preliminary injunction modified "by striking therefrom all reference to the use of the designs * * *." Id., 198 F.2d at page 344. In discussing the problem of federal jurisdiction, the court pointed to the fact that diversity of citizenship did not exist and that no registered mark was involved. Stauffer v. Exley was cited as sustaining federal jurisdiction under the Lanham Act and, while there is language in the opinion indicating a view that the Act gives a federal cause of action for "a 'naked' claim of unfair competition", Id., 198 F.2d at page 341, it seems proper to consider the decision as merely reaffirming Stauffer v. Exley in holding that a federal cause is given by the Lanham Act for unfair competition in the use of an unregistered trade name. See: Chamberlain v. Columbia Pictures Corp., supra, 186 F.2d at page 924; Sunbeam Furniture Corp. v. Sunbeam Corp., supra, 191 F.2d at page 145; cf. Pagliero v. Wallace China Co., supra, 198 F.2d at page 341, n. 1.

This interpretation of the holding in the Pagliero case finds support in the fact that in the grant to this court of original jurisdiction of "any civil action arising under any Act of Congress relating to patents, copyrights and trademarks", 28 U.S.C. § 1338(a), the word "'any * * *' means what it says", Kilpatrick v. Texas & Pac. R. Co., 1949, 337 U.S. 75, 77, 69 S.Ct. 953, 955, 93 L. Ed. 1223, and the Congress was explicit that "Such jurisdiction shall be exclusive of the courts of the states in patent and copyright cases", but not in trademark cases and a fortiori not in unfair-competition cases. See: 28 U.S.C. § 1338 (a) and (b); U. S. Printing etc. Co. v. Griggs etc. Co., supra, 279 U.S. at page 158, 49 S.Ct. 267; Dad's Root Beer Co. v. Doc's Beverages, 193 F.2d at pages 81–82; cf. American Auto Ass'n v. Spiegel, supra, 205 F.2d at pages 774–775; S. C. Johnson & Son v. Johnson, supra, 175 F. 2d at pages 178–180; Old Reading Brewery v. Lebanon Valley Brewing Co., supra, 102 F.Supp. at pages 438–439; Ross Products v. Newman, D.C.S.D.N.Y.1950, 94 F.Supp. 566, 567.

It is recognized of course that Pagliero v. Wallace China Co. and Stauffer v. Exley have been construed as holding that the Lanham Act gives a federal cause of action for unfair competition to "any plaintiff with whose interstate commerce the defendant has unfairly competed." See: American Auto Ass'n v. Spiegel, supra, 205 F.2d at pages 774–775; Ronson Art Metal Works v. Gibson Lighter Mfg. Co., D.C.S.D.N.Y.1952, 108 F.Supp. 755; Hosid Products v. Masbach, Inc., D.C.N.Y.1952, 108 F.Supp. 753; Old Reading Brewery v. Lebanon Valley Brewing Co., supra, 102 F.Supp. 437–439; Ross Products v. Newman, supra, 94 F.Supp. at page 567.

It seems proper nonetheless to construe the holdings as being only as broad as necessary to sustain federal jurisdiction in those particular cases, both of which as stated before involved unregistered "trade names" within the meaning of the Lanham Act. See: 15 U.S.C. §§ 1126, 1127, 1114–1125; cf. Stauffer v. Exley, supra, 184 F.2d at pages 963–964; Chamberlain v. Columbia Pictures Corp., supra, 186 F.2d at page 924; Sunbeam Furniture Corp. v. Sunbeam Corp., supra, 191 F.2d at page 145; Pagliero v. Wallace China Co., supra, 198 F.2d at page 341; Ross-Whitney Corp. v. Smith Kline & French Lab., 9 Cir., 1953, 207 F.2d 190, 193–194; and see seriatim: Hearings on H.R. 9041, 75th Cong., 3d Sess. 195 (1938); Hearings on H.R. 4744, 76th Cong., 1st Sess. 164, 169–171 (1939); Diggins, Federal and State Regulation of Trade-Marks, 14 Law & Contemp.Prob. 200 (1949); Lunsford, Trade-Marks and Unfair Competition, 40 Trade-Mark Rep. 169, 179 (1950); 64 Harv.L.Rev. 1209 (1951); Note, Federal Jurisdiction over Unfair Competition, 37 Minn.L.Rev. 268, 278 (1953); Note, Trade-Marks, Unfair Competition, and the Courts, 66 Harv.L.Rev. 1094, 1101 (1953); 22 Geo.Wash.L.Rev. 367 (1954).

■ If these two cases be construed as holding that federal jurisdiction, absent diversity of citizenship, extends to claims of unfair competition not involving "Trade names or commercial names", id. §§ 1126(g), 1127, or registered "marks", id. §§ 1126(h), 1127, resort to the doctrine of the "equity of the statute" is prerequisite, since neither the Lanham Act nor any other federal statute provides by its terms any substantive right or remedy for unfair competition generally. Cf. Hyde Park Clothes v. Hyde Park Fashions, 2 Cir., 204 F.2d 223, certiorari denied, 1953, 346 U.S. 827, 74 S.Ct. 46; Campbell Soup Co. v. Armour & Co., supra, 175 F.2d 795; Bell v. Hood, D.C.S.D.Cal.1947, 71 F.Supp. 813, 817–821; and see Bunn, The National Law of Unfair Competition, 62 Harv.L. Rev. 987, 991 (1940).

■ The "equity of the statute", which permits use of the common-law technique of reasoning by analogy from a statute, embraces the principle that a legislative enactment is properly treated as a declaration of policy which serves as precedent in analogous situations not expressly covered. by the statute itself. This age-old principle presupposes that the legislature-made precedent is entitled to recognition comparable to that accorded judge-made precedent, and application of the principle necessarily invokes the concept of *stare decisis* to employ the statute as a precedent-making declaration of legislative policy. See: United States v. Freeman, 1845, 3 How. 556, 44 U.S. 556, 565, 11 L.Ed. 724; Stone, The Common Law in the United States, 50 Harv.L.Rev. 4, 12 (1936); Landis, Statutes and the Sources of Law, Harvard Legal Essays, 213, 214–218 (1934); Pound, Common Law and Legislation, 21 Harv.L.Rev. 386 (1908). As Mr. Justice Frankfurter observed upon dissenting in Pope v. Atlantic Coast Line R. Co., 1953, 345 U.S. 379, 73 S.Ct. 749, 97 L.Ed. 1094: "Statutes * * * are not to be deemed self-enclosed instances; they are to be regarded as starting points of reasoning, as means for securing coherence and for effectuating pur-

pose." 345 U.S. at page 390, 73 S.Ct. at page 755; cf. United States v. Atlantic Mutual Ins. Co., 1952, 343 U.S. 236, 245–249, 72 S.Ct. 666, 96 L.Ed. 907 (dissenting opinion); Panama R. R. Co. v. Rock, 1924, 266 U.S. 209, 215–216, 45 S.Ct. 58, 69 L.Ed. 250 (dissenting opinion); Johnson v. United States, 1 Cir., 1908, 163 F. 30, 32, 18 L.R.A.,N.S., 1194 (Holmes, Circuit Justice).

However it is not essential to decision to look to the "equity of the statute" here. Since plaintiff at bar has invoked the equity jurisdiction of this court under the diversity statute, 28 U.S.C. § 1332, as well as under the Lanham Act, the complaint will be considered as asserting substantive claims under both the Lanham Act and the law of California, with an alternative prayer leaving the choice of law to the court.

Electing to exercise equity jurisdiction under the diversity statute, 28 U.S. C. § 1332, this court must then apply the substantive law of California governing the tortious conduct commonly referred to as unfair competition, Pecheur Lozenge Co. v. National Candy Co., supra, 315 U.S. at page 667, 62 S.Ct. 853; Fashion Originators Guild v. Federal Trade Commission, supra, 312 U.S. at page 468, 61 S.Ct. 703; Franke v. Wiltschek, 2 Cir., 1953, 209 F.2d 493, 494; Sunbeam Furniture Corp. v. Sunbeam Corp., supra, 191 F.2d at page 145, as the Court appears to have done with respect to the claim of unfair competition in Ross-Whitney Corp. v. Smith Kline & French Lab., supra, 207 F.2d at pages 193–194, 196–199.

Section 3369 of the Civil Code of California provides in part that: "Any person performing or proposing to perform an act of unfair competition within this State may be enjoined in any court of competent jurisdiction. * * * unfair competition shall mean and include unfair or fraudulent business practice and unfair, untrue or misleading advertising * * *."

■■ Use of the phrase "shall mean and include" indicates that the statutory definition was not intended to be restric-

tive or exclusive. Athens Lodge No. 70 v. Wilson, 1953, 117 Cal.App.2d 322, 255 P.2d 482. It is left to the courts to determine what conduct will constitute unfair competition in a particular case; the test question always is whether the public is likely to be deceived. Schwartz v. Slenderella Systems of California, 1953, Cal.App., 260 P.2d 256 (rehearing granted see 271 P.2d 857); MacSweeney Enterprises, Inc. v. Tarantino, 1951, 106 Cal.App.2d 504, 235 P.2d 266; but see Norman Products Co. v. Sequoia Mfg. Co., D.C.N.D.Cal.1952, 107 F.Supp. 928.

As said in American Philatelic Society v. Claibourne, 1935, 3 Cal.2d 689, 46 P.2d 135: "The casebooks are replete with cases which hold that the essence of unfair competition lies in the simulation and imitation of the goods of a rival or competitor with the purpose of deceiving the unwary public into buying the imitation under the impression that it is purchasing the goods of such competitor." 3 Cal.2d at page 697, 46 P.2d at page 139.

The copying or simulation of an article where the effect thereof is to appropriate another's trade will be enjoined by the California courts. Banzhaf v. Chase, 1907, 150 Cal. 180, 183, 88 P. 704, 705–706; Weinstock, Lubin & Co. v. Marks, 1895, 109 Cal. 529, 539–540, 42 P. 142, 145, 30 L.R.A. 182; McCord Co. v. Plotnick, 1951, 108 Cal.App. 2d 392, 239 P.2d 32. Even though each feature composing the article be open to public use, if the ensemble created by the imitator produces an object which misleads the public to the prior user's detriment, there arises under California law a cause of action for unfair competition. Grant v. California Bench Co., 1946, 76 Cal.App.2d 706, 708, 173 P.2d 817, 818; cf. Yale & Towne Mfg. Co. v. Alder, 2 Cir., 1907, 154 F. 37, 38.

Judge Learned Hand clearly stated the underlying principle in Wesson v. Galef, D.C.S.D.N.Y.1922, 286 F. 621: "Though a man may make several kinds of goods, each may still become known as his, and when you copy any one down to the least detail, measure for measure, you may as much represent that your goods are his as though he made only one. While in such cases the protection is narrow, for that very reason the mark of ownership may be picked up from a combination of elements, all old and none sufficient, if taken alone." 286 F. at page 624; see 1 Callmann, Unfair Competition and Trade-Marks 249, § 16.2(d), "Chinese Copy" (2d Ed. 1950).

In the language of the Supreme Court of California in Scudder Food Products v. Ginsberg, 1943, 21 Cal.2d 596, 134 P.2d 255: "The theory of plaintiff is that defendants accomplished their alleged fraudulent purpose by imitating a distinct combination of features of size, shape, color arrangement, and textual similarities adopted by the plaintiff, and that by such means the public was misled." 21 Cal.2d at pages 601–602, 134 P.2d at page 259; see American Distilling Co. v. Bellows & Co., 1951, 102 Cal. App.2d 8, 21–22, 226 P.2d 751, 759. The same type of attempt to appropriate plaintiff's trade is apparent in the case at bar.

As Judge Stephens explained in Ross-Whitney Corp. v. Smith Kline & French Lab., supra, 207 F.2d 190, upon sustaining a preliminary injunction granted by my colleague Judge Carter against the sale of a drug in the form of an orange, valentine-like heart-shaped tablet indistinguishable in appearance from the prior user's drug of the same type: "Fraudulent practices which induce confusion of goods and deception of the public have been proscribed as outside the realm wherein competitive forces may operate freely and untrammeled. In order to prove the fraud it is necessary to establish that the name or appearance of the injured product has acquired either a technical trade-mark or a secondary meaning, the copying of which would lead to confusion; and that the copying product is intended to be palmed off upon the thereby deceived consumer." 207 F.2d at page 196.

Absent the statutory protection of a patent or a registered trade-mark,

there is nothing to prevent an imitator from precisely copying the prior user's product in those rare instances where the nature of the article or the circumstances of its marketing or use are held to be such as to warrant a finding that similarity to the point of duplication does not result in confusion of purchasers as to the source or origin of the product. See e. g. Electric Auto-Lite Co. v. P & D Mfg. Co., 2 Cir., 1940, 109 F.2d 566; Cheney Bros. v. Doris Silk Corp., 2 Cir., 35 F.2d 279, certiorari denied, 1929, 281 U.S. 728, 50 S.Ct. 245, 74 L.Ed. 1145; Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 1917, 247 F. 299.

■ But where "likelihood of deception" and hence a secondary meaning is shown, the prior user is entitled to injunctive relief under California law without the necessity of establishing actual injury to his business or reputation. "If articles which are not produced by him are attributed to him or associated with his name, the injury is obvious." Winfield v. Charles, 1946, 77 Cal.App.2d 64, 70, 175 P.2d 69, 74. The injury is " 'from a representation to the public that [he] produces a product which [he] does not in fact produce and over which [he] has no control'." Del Monte Special Food Co. v. California Packing Co., 9 Cir., 1929, 34 F.2d 774, 775, quoted in Winfield v. Charles, supra, 77 Cal.App.2d at page 71, 175 P.2d at page 74.

Likelihood of "consumer-confusion" being "the test of secondary meaning," Briddell v. Alglobe Trading Corp., supra, 194 F.2d at page 421, that test is readily met in most cases of exact copying, because the inference is usually plain that the imitator intends such a result. See: Winfield v. Charles, supra, 77 Cal.App.2d at page 70, 175 P.2d at page 73; cf. American Chicle Co. v. Topps Chewing Gum, 2 Cir., 1953, 208 F.2d 560, 562–563, 67 Harv.L.Rev. 1090 (1954); Stork Restaurant v. Sahati, supra, 166 F.2d at page 357.

■ Since the profit motive prompts competition which the policy of the law encourages to sustain our system of free enterprise, there is rational basis for holding that the newcomer, by copying the first comer's product, admits it to be more readily marketable. And in the absence of evidence to the contrary, there is rational basis for the added inference that the latter can more readily market copies of the former's product because the consuming public is confused into believing that the copies are the first comer's product. See: American Chicle Co. v. Topps Chewing Gum, supra, 208 F.2d at page 563; 3 Restatement, Torts, § 708, comments c and d, § 729, comment f (1938); cf. United States v. Ross, 1875, 92 U.S. 281, 283–284, 23 L.Ed. 707; Hunter v. Shell Oil Co., 5 Cir., 1952, 198 F.2d 485, 490; E. K. Wood Lumber Co. v. Anderson, 9 Cir., 81 F.2d 161, 166, certiorari denied, 1936, 297 U.S. 723, 56 S.Ct. 669, 80 L.Ed. 1007; Vaccarezza v. Sanguinetti, 71 Cal.App.2d 687, 163 P.2d 470, 476–479 (1945); 1 Wigmore, Evidence, §§ 26, 41 (3d ed. 1940).

■ As Mr. Justice Holmes observed in Schlitz Brewing Co. v. Houston Ice Co., 1919, 250 U.S. 28, 39 S.Ct. 401, 63 L.Ed. 822: "It is not necessary that the imitation of the plaintiff's feature taken alone should be sufficient to deceive. It is a fallacy to break the fagot stick by stick." 250 U.S. at page 29, 39 S.Ct. at page 401.

■ The affidavits which have been filed by plaintiff in support of the application for a preliminary injunction serve as proof, Fed.Rules Civ.Proc. rule 43(a, e), 28 U.S.C.A., that a secondary meaning as to plaintiff's ash trays has been established to the extent that the ultimate purchaser of defendant's imitations believes he is buying Haeger pottery of this very design, identical in size, shape and color; and if defendant's products are inferior, as is manifest from the exhibits at bar, plaintiff's goodwill, as well as its trade, will be damaged. 3 Restatement, Torts, § 711(c), § 74(b), comments a, c, d, j (1938).

The certainty and extent of secondary meaning of goods or services varies directly with the probability of confusion of the consumer. Since defendant here manufactures an ash tray of identical

proportions, color, texture, and design to that in prior use by plaintiff, see 1 Nims, Unfair Competition and Trade-Marks 370, 380, Ch. X, Simulation of Articles Themselves (4th Ed. 1947), the retailer can easily palm off defendant's ash trays as plaintiff's products.

Whether, as urged at bar, the placing of defendant's name on the bottom of the ash tray sufficiently differentiates it from plaintiff's product depends upon "the nature of the article and the reasonable certainty that the mark will be seen and appreciated by the ordinary purchaser." Estate Stove Co. v. Gray & Dudley Co., 6 Cir., 1930, 41 F.2d 462, 463, judgment vacated on other grounds, 6 Cir., 1931, 50 F.2d 413. Considering the nature and intended use of the article and its manner of sale, there is reasonable certainty that the name "Gilner" on the bottom of an ash tray identical to plaintiff's ash tray is not sufficient to prevent deception and palming off. Cf. Menendez v. Holt, 1888, 128 U.S. 514, 521, 9 S.Ct. 143, 32 L.Ed. 526; American Chicle Co. v. Topps Chewing Gum, supra, 208 F.2d at pages 562–563; Ross-Whitney Corp. v. Smith Kline & French Lab., supra, 207 F.2d at page 197.

That dealers in the trade are not deceived is immaterial. California embraces the rule in William R. Warner & Co. v. Eli Lilly & Co., 1924, 265 U.S. 526, 530, 44 S.Ct. 615, 617, 68 L.Ed. 1161: "That no deception was practiced on the retail dealers, and that they knew exactly what they were getting, is of no consequence. The wrong was in designedly enabling the dealers to palm off the preparation as that of the respondent." American Philatelic Society v. Claibourne, supra, 3 Cal.2d at page 697, 46 P.2d at page 139; Ross-Whitney Corp. v. Smith Kline & French Lab., supra, 207 F.2d at page 197; Smith Kline & French Lab. v. Midwest Chemical Development Corp., D.C. N.D.Ohio 1951, 96 F.Supp. 797, 799.

By a confusion of source and origin, a bald attempt is here made to secure for defendant's goods some of the good will, advertising and sales stimulation built by plaintiff. Defendant has an infinity of other designs from which to choose, even though they may closely resemble those of plaintiff. Moreover, defendant may make variations of the ash trays in controversy, and may even copy styles in prior use by plaintiff, so long as the ash trays are so distinguished that the unwary buyer will not mistake defendant's product for that of plaintiff. See: Stork Restaurant v. Sahati, supra, 166 F.2d at pages 356–357, 361; Zangerle & Peterson Co. v. Venice Furniture Novelty Mfg. Co., 7 Cir., 1943, 133 F.2d 266, 269; Rymer v. Anchor Stove & Range Co., 6 Cir., 1934, 70 F.2d 386, 388; id., 6 Cir., 97 F.2d 689, certiorari denied, 1938, 305 U.S. 653, 59 S.Ct. 246, 83 L.Ed. 422; A. C. Gilbert Co. v. Shemitz, 2 Cir., 1930, 45 F.2d 98, 100; Enterprise Mfg. Co. v. Landers, Frary & Clark, 2 Cir., 1904, 131 F. 240, 241; Luminous Unit Co. v. R. Williamson & Co., D.C.N.D.Ill., 241 F. 265, 269, affirmed, 7 Cir., 1917, 245 F. 988.

Copying of the product of another, as defendant is doing here, in precise detail as to design, shape and color, and in every other respect than quality, is nothing less than piracy. And where as here myriad variations are available to the misappropriator, his very act of copying strongly impels the inference that he intends to reap commercial gain by trading on the good will of the first comer. See: American Chicle Co. v. Topps Chewing Gum, supra, 208 F.2d at pages 562–563; 3 Restatement, Torts, § 729(b), comment f (1938); 67 Harv.L. Rev., supra, at 1091.

The tendency of the law is " 'in the direction of enforcing increasingly higher standards of fairness or commercial morality in trade.' " See: Ross-Whitney Corp. v. Smith Kline & French Lab., supra, 207 F.2d at page 196, n. 17; Q-Tips, Inc. v. Johnson, 3 Cir., 1953, 206 F.2d 144, 145; 3 Restatement, Torts, § 540 (1938).

Our moral standards are well sustained and the public interest in free competition is advanced where a court of equity forbids the immoral act of mis-

appropriation by exact copying of the goods or services of another. Cf. International News Service v. Associated Press, 1918, 248 U.S. 215, 236, 239–240, 246–248, 258–262, 39 S.Ct. 68, 2 A.L.R. 293; Briddell v. Alglobe Trading Corp., supra, 194 F.2d at pages 421–422 (Judge Clark dissenting); Electric Auto-Lite Co. v. P & D Mfg. Co., supra, 109 F.2d at page 567; Cheney Bros. v. Doris Silk Corp., supra, 35 F.2d at page 280.

■ Defendant argues that what is being done here amounts to nothing more than mere copying of functional features of a competitor's work, which is not actionable because no secondary meaning can be attributed to functional features. 3 Callmann, supra, 1254, § 77.4(e) (1). It is true of course that in the absence of statutory protection, the functional features of goods or services may be copied. See: 3 Restatement, Torts, § 729, § 741(b) (i) (ii), comment b, c, d, j, § 742, comment a (1938).

Webster's New International Dictionary (unabridged) Vol. 1, p. 1019 (2d ed. 1945) defines "functional" as "of, pertaining to, or connected with, a function or functions"; and defines "function" as "the natural and proper action of anything * * * the natural or characteristic action of any power or faculty." The "natural, proper or characteristic" action of an ash tray is to hold ashes. Its shape or form, so long as not substantially affecting utility for holding ashes, is clearly not functional.

■ Whether an ash tray is round, oblong, egg-shaped, square, or of free form, makes no difference as to its utility or usefulness in holding ashes. Holding ashes is its function, and that function can of course be freely copied. But where, as here, the ash trays have an unusual appearance, and are strikingly different from the run-of-the-mill ash tray, the combination of form, color and shape are unessential and nonfunctional to its use as an ash tray. If the aesthetic quality of the form were held to be functional, then every feature of a product, even the ornamental and nonutilitarian, would be functional. It is the utility to hold ashes, and not a precise shape or form, which is "the natural and characteristic action" of an ash tray.

Of course in the imagined case where the nature of the article is such that exact copying is essential in order to produce it at all, copying must be permitted despite unavoidable customer confusion; otherwise the first comer would have a practical monopoly of the article. This is the reason for the rule permitting copying of functional features of any article not enjoying patent or other statutory protection.

But the "slavish" copying of features not necessary to be reproduced in order to produce the article in commercial competition is sheer piracy which is clearly without moral justification, is parasitic in nature, does nothing to advance our system of free enterprise, and should be held to be an unfair trade practice without legal justification. See 3 Restatement, Torts, Chapter 35, Confusion of Source, Introductory Note, pp. 537–540, § 711, Topic 3. Imitation of Appearance, Introductory Note, p. 622, § 729, comment f, § 741, comment j (1938).

■ Plaintiff's ash trays may not be copyrightable as "works of art", Mazer v. Stein, supra, 347 U.S. at page 212, 74 S.Ct. 460, 467, but they embody unique features non-essential to the ash-holding characteristic of the ash tray. These features have acquired a secondary meaning. See 2 Callman, supra, 1261, § 77.4(e) (2).

Plaintiff's motion for a preliminary injunction will be granted for the reasons stated, and because of the high probability that the plaintiff will make out a case at the trial. Ross-Whitney Corp. v. Smith Kline & French Lab., supra, 207 F.2d at page 194. Defendant's motion to dismiss, Fed.Rules Civ.Proc. Rule 12 (b) (6), 28 U.S.C.A., and the alternative motion for a more definite statement, id. Rule 12(e), are denied. Plaintiff will lodge with the Clerk pursuant to local Rule 7 within five days proposed interlocutory findings of fact, Fed.Rules Civ. Proc., Rule 52(a), 28 U.S.C.A.; City of Hammond v. Schappi Bus Line, 1927, 275

272

U.S. 164, 172, 48 S.Ct. 66, 72 L.Ed. 278, conclusions of law and order for issuance of writ of injunction pendente lite as prayed, conditioned upon plaintiff's furnishing a bond or undertaking or other security in the penal sum of $20,000, in the form and manner specified in Rule 65(c) of the Federal Rules of Civil Procedure and local rule 8 of this court.