The **STALKER CORPORATION, a Michigan corporation, Plaintiff,**

v.

The **UNITED STATES of America, Defendant.**

**Civ. No. 21485.**

United States District Court
E. D. Michigan, S. D.
Sept. 27, 1962.

Paul R. Trigg, Jr., Allan Neef, Dykema, Wheat, Spencer, Goodnow & Trigg, Detroit, 26, Mich., for plaintiff.

Robert F. Ritzenhein, Asst. U. S. Atty., Detroit, 26, Mich., Arthur L. Biggins, Solomon Fisher, Dept. of Justice, Tax Div., Civil Trials Section, Washington, D. C., for the defendant.

FREEMAN, District Judge.

This action filed by the Stalker Corporation (hereinafter sometimes referred to as the taxpayer) pursuant to Title 28 U.S.C.A. § 1346(a) (1) for the recovery of income taxes in the amount of $8,575.90, plus interest, based on an alleged overassessment and payment thereof for the calendar year 1956, is before the Court on cross-motions for summary judgment under Rule 56(a) and (c) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

The stipulated facts, in pertinent part, are as follows:

1. Taxpayer is and has been at all times relevant hereto engaged in the manufacture of hollow sheet metal gas turbine blades, rotors, vanes, stators and other turbine components and the precision brazing of super-alloys and, at the end of 1952, had developed certain superior processes and techniques for use in such manufacturing which were not known to the trade and constituted trade secrets.

2. Thompson Products, Inc. (hereinafter referred to as Thompson) prior to 1955 had been engaged in the business of manufacturing blades, vanes, rotors, wheels and dampers for use in air vehicles and compressors and turbines, and in order to improve its methods and products, approached the taxpayer and entered into negotiations which culminated in two written contracts with taxpayer, effective January 1, 1956, pursuant to one of which agreements Thompson paid taxpayer $40,000 to make available to Thompson the secret processes, techniques, methods and know-how used by taxpayer in its manufacturing operations which were subsequently furnished to Thompson but were never used by the latter in manufacturing on a commercially profitable basis.

3. After entering into these contracts, taxpayer was free to continue using its know-how, secret processes and other technical information and did, in fact, use such information in its own business including the production of atomic energy and fuel cells and continued to produce its products which would have been in competition with those that Thompson could have produced with such know-how, secret processes and technical information furnished it by taxpayer, had Thompson produced those products on a commercial basis.

4. It was the understanding of both Thompson and taxpayer that the contract did not require the disclosure by the latter to the former of any secret processes or engineering and technical data and know-how that were developed by the latter subsequent to January 1, 1956.

5. Taxpayer never disclosed, sold or offered to sell the trade secrets which it furnished Thompson to any other person or firm other than Thompson, and taxpayer referred the only request it received for such secrets to Thompson.

6. Taxpayer, in filing its income tax return for the calendar year 1956, reported the $40,000 it received from Thompson as a long-term capital gain, which item, after audit by the Internal Revenue Service, was treated as ordinary income, and, as a result, a deficiency of $6,976.41, plus interest, in the amount of $1,599.49 was assessed to and paid by the taxpayer, who subsequently filed a claim for refund of such alleged overassessment, which was never allowed, and this suit followed.

The only issue presented by these cross-motions for summary judgment is whether the $40,000 that the plaintiff taxpayer received from Thompson constitutes ordinary income or a long-term capital gain.

Both the taxpayer and the Government agree that in order for the $40,000 payment to constitute a long-term capital gain under the definition contained in § 1222(3) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 1222(3), three criteria must be complied with:

1. The trade secrets must have been capital assets of the plaintiff taxpayer.

2. It must have been in possession of the trade secrets for at least 6 months.

3. There must have been a sale of the secrets by the taxpayer.

The Government concedes that the trade secrets were capital assets of the taxpayer and that it had possession of such secrets for more than six months. Consequently, the only question remaining for this Court to determine is—was there a sale of the trade secrets?

In support of its position that there was a sale, the taxpayer contends that:

1. The sole property right in a trade secret is the right to keep it secret, and the mere disclosure of the secret is a surrender of such property right unless the recipient is under a contractual or equitable obligation not to disclose the secret without the permission of the owner. Consequently, when the taxpayer disclosed its trade secrets to Thompson, it surrendered a portion of its ownership rights therein unless there were restrictions placed on Thompson with respect to the use of such secrets that enabled the plaintiff to prevent Thompson from disclosing them to others.

2. There were no such restrictions placed upon Thompson because

(a) The portion of the contract dealing with any trade secrets that each of the parties discovered from the other during the performance of the contract explicitly committed the discovering party not to disclose these secrets, while paragraph one of the contract dealing with the furnishing of the trade secrets in question does not place any such requirement of secrecy upon Thompson.

(b) Paragraph one of the contract does not use any language peculiar to a licensing agreement.

3. In a sale of trade secrets, there is an implied covenant that the seller will not disclose these secrets to others, and

since there is such an implied covenant in the contract between taxpayer and Thompson, there was a sale of the trade secrets involved.

4. In recognition of the fact that there was a sale of the trade secrets in question that prevented taxpayer from disclosing them to others, it referred its only request for such disclosure to Thompson.

On the other hand, the Government, in support of its position that there was not a sale and that under the taxpayer's theory of the applicable law there is an issue of fact which precludes this case from being disposed of by summary judgment, contends that:

(1) In order to have a sale of trade secrets, the transferor must transfer all substantial rights that he possesses in such secrets, and, in the instant case, taxpayer retained the substantial right to use the trade secrets in question and did use them.

(2) Under the applicable trade secrets law, taxpayer did not transfer to Thompson the right to control the disclosure of the trade secrets since under the terms of the contract, taxpayer was not prevented from disclosing these secrets to others.

(3) In order to find that the parties to the contract subjectively interpreted it so that taxpayer could not disclose to others the trade secrets it transferred to Thompson, this Court would have to consider evidence outside the contract creating an issue of fact that would make the instant case not suitable for determination by summary judgment under Rule 56(a) of the Federal Rules of Civil Procedure.

The crux of the controversy between the parties turns on the question—what constitutes a sale of a secret process.

■■ Conceptually, there must be a passing of a property interest in order for a particular transaction to constitute a sale. It is established law that a trade secret constitutes property. Nelson v. Commissioner of Internal Revenue (C. A.6), 203 F.2d 1; also see E. I. DuPont De Nemours Powder Co. v. Masland, 244 U.S. 100, 37 S.Ct. 575, 61 L.Ed. 1016; Cheney Bros. v. Doris Silk Corp. (C. A.2), 35 F.2d 279.

Whether or not the transfer of a trade secret constitutes a sale for tax purposes, the tests used in determining whether or not there has been a sale of a patent have been applied. E. I. DuPont De Nemours and Company v. United States (Court of Claims), 288 F.2d 904; Creed and Bangs, "Know-How" Licensing and Capital Gains, 4 The Patent, Trademark and Copyright Journal of Research and Education, 93 (1960).

§ 1235(a) of the Internal Revenue Code of 1954 (26 U.S.C. 1958 ed., § 1235(a)) sets forth the requirements for the sale of a patent as follows:

"A transfer (other than by gift, inheritance, or devise) of property consisting of all substantial rights to a patent, or an undivided interest therein which includes a part of all such rights, by any holder shall be considered the sale or exchange of a capital asset held for more than 6 months, * * *."

The plaintiff taxpayer maintains that merely having disclosed its secret process to another without any restrictions put upon such person's further disclosure of the secret resulted in plaintiff's surrendering a portion of its ownership rights and, consequently, the transaction was one of sale.

This same argument was made and rejected by the Court in E. I. DuPont De Nemours and Company v. United States (Court of Claims), supra, 288 F.2d 904. In that case the Court then went on to analyze the transfer of a trade secret with the analogous situation of a patent assignment. The Court noted that there was a difference between a patent and a trade secret in that the former was an invention generally known but protected as a legal monopoly, while the latter was based on secrecy, but on its legal discovery, it could be used with impunity.

The Court found that the essential element of a trade secret which permits of ownership and which distinguishes it from other forms of ideas is the right in the discoverer to prevent unauthorized disclosure of the secret. The Court also concluded that—"No disposition of a trade secret is complete without some transfer of this right to prevent unauthorized disclosure"—and then pointed out a very valid and important similarity between a patent and a trade secret at p. 911 of the opinion:

> "The value in both lies in the rights they give to their owners for monopolistic exploitation. The owner of a patent can make something which no one else can make because no one else is permitted. But circumstances are frequently such that the owner of a trade secret can make something which no one else can make because no one else knows how. The patent owner has a monopoly created by law; the trade secret owner has a monoply in fact. In both cases there exists the possibility of either limited or complete transfers of the right to the exclusive use of an idea."

■ It is established tax law that in order for a transfer of a patent to constitute a sale, the right to prevent all others from operating under the patent must be transferred and not merely the right to use the patent. Commissioner of Internal Revenue v. Hopkinson (C.A. 2), 126 F.2d 406; Creed and Bangs, "Know-How" Licensing and Capital Gains, 4 The Patent, Trademark and Copyright Journal of Research and Education 93, 101 (1960).

The Court in the DuPont case analyzed transfers of trade secrets as being of two types and 288 F.2d on page 912 of its opinion stated:

> "A person may pay the discoverer of a trade secret for its disclosure, but in fact the disclosure which is purchased carries with it the right to use the trade secret without liability to the owner. * * * Again, a person may pay the discoverer of

a trade secret for disclosure (i. e., the privilege of using the trade secret) and in addition pay for the *residual right possessed by the discoverer*—the right to prevent unauthorized disclosure. And this right to prevent unauthorized disclosure is effectively as stated above, *the right to prevent anyone else from using the secret process.*" (Emphasis supplied)

In Creed and Bangs, supra, at page 102, the authors state:

> " * * * the transferor corporation's continued use or reserved right to use the know-how in licensing its use to others would apparently mean that it had granted something less than the *exclusive* right to make, use, and sell under the know-how; or in the alternative, that it had retained a right of *provable substantial value.*" (Except for "exclusive", emphasis supplied.)

■ This Court concludes that in order for a transfer of a trade secret to meet the sale requirement of the Code, the transferor must convey his most important rights—the right to prevent unauthorized disclosure and the right to prevent further use of the trade secret by all others. A transfer of anything less results in a transaction which is not a sale under the Code.

■ In the instant case, the plaintiff taxpayer argues that Thompson had the right to prevent plaintiff from disclosing the trade secrets involved since there is a covenant implied in a sale of such secrets that the vendor will not disclose them to third parties. However, this argument is without merit because it assumes a sale, the precise point in issue.

The plaintiff further contends that since the contract explicitly committed it and Thompson not to disclose any other trade secrets that either party discovered from the other during the performance of the contract, while paragraph one of the contract which deals with the furnishing of the trade secrets did not

place any such requirement of secrecy upon Thompson, and that because paragraph one did not contain language peculiar to a licensing agreement, Thompson was not restricted from disclosing any of the transferred trade secrets. The fallacy in these arguments is that: (1) the taxpayer was likewise not expressly prohibited from disclosing the secrets it transferred to Thompson, which would clearly negate any inference that a sale of such trade secrets had occurred; and (2) although paragraph one of the contract does not contain language indicating a license, neither does it contain language indicating a sale, since it merely commits taxpayer to "furnish" Thompson with the trade secrets in question. Consequently, neither of these arguments helps to resolve the problem before the Court.

 Plaintiff's final argument that Thompson had the right to prevent disclosure by taxpayer Stalker is based on the fact that Stalker referred its only request for a disclosure of the secrets to Thompson. Whatever Stalker's motives were for such action is not determinative of its legal rights under the contract. Further, under the applicable trade secrets law, a sale of such secrets transfers the right to prevent unauthorized disclosure, which is the right to prevent anyone else from using the process. E. I. DuPont De Nemours and Company v. United States, supra, 288 F.2d pp. 911–912; Ellis, Trade Secrets, § 384. Under the contract in the instant case, Thompson could not prevent the taxpayer Stalker from using the process, and, in this situation, under the authorities cited, Thompson could not prevent taxpayer from disclosing the secrets to third parties.

For these reasons, the trade secrets furnished and made available by taxpayer to Thompson did not meet the requirements of a sale under the Code. Accordingly, the amount realized on the transaction must be taxed as ordinary income and not a long-term capital gain.

An appropriate order may be submitted.